O’NIELL, Chief Justice.
 

 The defendant was prosecuted and convicted on a bill of information charging that he “did unlawfully engage in the business of handling intoxicating liquor, to-wit: twelve (12) pints of whiskey and twelve (12) pints of wine”, in violation of a prohibition ordinance, being Ordinance No. 188, of the Police Jury of the Parish of Lincoln. He was sentenced to pay a fine and be imprisoned, and is appealing from the conviction and sentence. The case— being triable by the judge — without a jury —was submitted on a stipulation of facts. The only question that was submitted therefore was the question of law, whether, under the facts stipulated, the defendant committed the offense of which he was accused, i. e. “engage in the business of handling intoxicating liquor”.
 

 The defendant applied for a new trial on the ground that the judgment of conviction was contrary to the law and the evidence, and, in order to present to the court the question of law clearly and free from any issue of fact, it was agreed by the district attorney and the attorney for the defendant — and was admitted by the
 
 *847
 
 judge in thé’pér curiam’on the bill of exception which was reserved to the overruling of the motion for a new trial — that the judgment of conviction was based entirely. upon the .stipulation of facts, repeated in the per curiam. The facts so stipulated and admitted are very simple. The defendant resides in the Town of Hodge, in Jackson Parish, where he conducts a taxicab business. He was arrested in’ Ruston, the parish seat of Lincoln Parish, while he was driving his automobile on the main highway, returning from West Monroe, in Quachita Parish, to his home, in Jacksbn ¡'Parish. The arresting officers found in the automobile 12 pints of whiskey and- 12 pints of wine. The liquor was bought by’ the'defendant in West Monroe, where the sale of intoxicating liquors is not prohibited.'1 ■ 'The liquor was not bought for sale’ or. intended for sale by the defendant. Thé wine was bought for his personal use or consumption; and the whiskey was bought for three of his friends and fellow townsmen, who requested him to buy the whiskey for them on his visit to Monroe, and who gave him in advance the money with which to pay for the whiskey. The three friends so testified on the trial of the case, and their testimony not only stands uncontradicted but is a part of the stipulation’ of facts. The marshal of the Town of -Hodge and the sheriff of Jackson Parish both testified that the defendant was a man of good character and had never been accused or suspected of selling intoxicating liquor. The testimony of these witnesses not only stands uncontradicted but is also a part of the stipulation óf facts. The defendant had no intention of stopping anywhere in Lincoln Parish, and in fact did. not stop in the parish until the police officers stopped him in Ruston and asked him if he had any whiskey or wine in his car. He readily admitted that he had the whiskey and wine in the rear compartment of the car, and gave to one of the officers the key to unlock the compartment. The defendant was not engaged in any liquor business anywhere, nor engaged in any business in-Lincoln Parish. He did not, by having the wine and whiskey in his car, “engage-in the business of handling- intoxicating liquors”, — as charged in the bill of information, — or in any reasonable’ meaning of the term “engage in the business of handling intoxicating liquors”. The meaning of the word “engage”, as used in the bill of information in this case, is given in Webster’s New International Dictionary thus: “To embark in a business.” And the verb “handle”, as used in the bill of information, is defined in the same dictionary as “to buy and sell; to deal or trade in; as they
 
 handle
 
 only fruit”. Accordingly, to “engage in the business of handling intoxicating liquors” means to engage in the business of buying and selling, or dealing or trading in, intoxicating liquors. It is not disputed, as a fact, that the defendant was not so engaged, in Lincoln Parish or in any other parish.
 

 The ordinance No. 188, which the defendant is accused of violating, does not prohibit or purport to prohibit the transportation or the possession of intoxicating liquor if such transportation or possession has no relation to the selling or the purpose
 
 *849
 
 of selling the liquor. The second section of the ordinance, being the section which the defendant was accused of violating, provides: “That it shall be unlawful for any person, firm, association of persons, corporation, or anyone else, to engage in the business of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, storing or consuming of beer, ale, porter, fruit juices, wine, malt, vinous, spirituous, alcoholic or intoxicating liquors, containing more than one-half of one per centum of alcohol by volume, otherwise than when prescribed by a licensed physician as a medicine, within the Parish of Lincoln, State of Louisiana.”
 

 The ordinance has a preamble declaring that it was authorized by a majority vote of the electors of the parish, determining “that permits and licenses for the
 
 traffic
 
 in the business of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, storing or consuming of beer, porter, ale, fruit juices, wine, malt, vinous, spiritous, alcoholic or intoxicating liquors, containing more than one-half of one per centum of alcohol by volume, otherwise than when prescribed by a licensed physician as a medicine, throughout the Parish of Lincoln, State of Louisiana, should be prohibited and withheld”. [We italicized the word traffic.]
 

 The statute, under authority of which Ordinance No. 188 was adopted, being Act No. 17 of the First Extra Session of 1935, does not in terms authorize — or purport to authorize — a parish, ward or municipality to prohibit the transportation or possession of intoxicating liquor if such transportation or possession has no relation to the selling or purpose of selling the liquor.
 

 In the title of the act it is declared that, in order to make local option effective, the act authorizes the governing authorities of all parishes and municipalities to prohibit
 
 the traffic in
 
 intoxicating liquors and to prescribe penalties for the violation of such ordinances. According to the title of the act, therefore, the prohibition ordinances are intended to prohibit — and do in fact prohibit — not the mere possession of intoxicating liquors but the
 
 traffic in
 
 such liquors. Another evidence of this intendment is that it is declared in the first section of the act that if a majority-of the electors of a parish, ward or municipality, voting at a local option election, “determine that the
 
 business
 
 of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, storing or consuming of alcoholic or intoxicating liquors * * * shall not be licensed or permitted therein [in the parish, ward or municipality],
 
 such business
 
 shall not be therein licensed or permitted.” [We have italicized the word
 
 business.
 
 ] Again, in :the second section of the statute, the only propositions that are authorized to be submitted to" a vote of the electors are declared to be “propositions in respect to the
 
 traffic
 
 in all such liquors”. [Italics ours.]. Again, in the third section, it is said that the State shall not grant a permit or license for the
 
 Sale
 
 of intoxicating liquors, except to druggists for sale as a medicine when prescribed by a- licensed physician, in' any parish, municipality or ward in which the
 
 sale
 
 of
 
 *851
 
 intoxicating liquors is prohibited by local option ordinances. [Italics ours.] Again, in the fourth section of the act, it is provided that the local option election is to determine whether “the aforesaid
 
 business”
 
 shall be permitted or prohibited, and that if a majority of the votes cast shall be against “permitting the
 
 sale or disposition
 
 of such liquors”, the vote or decision shall be controlling in any ward, city or town in the parish. [Italics ours.] And in the second paragraph of that section it is declared that if the question submitted is whether intoxicating liquors containing more than ' one-half of one per cent but not more than six per cent of alcohol by volume “shall be
 
 sold”,
 
 etc.; and, further on in that paragraph, it is said that if a majority of the electors, shall “determine that the
 
 business
 
 voted upon may be conducted”, etc., “such
 
 business
 
 may be conducted”, etc. [Italics ours.] And, again, near the end of the same paragraph, provision is made for submitting the proposition whether the milder form of intoxicating liquors “shall be sold”. In the sixth section of the act it is declared that, in order to make the prohibition effective in the parish, ward or municipality in which “the aforesaid
 
 business
 
 is prohibited by the vote' of the electors”, the governing authorities of the parish or municipality may, by ordinance, provide penalties for the violation of the prohibition ordinance.- In the seventh or concluding section of the act, it is provided that if' a-'majority of the voters in a local 'option election “determine that any of the aforesaid
 
 business
 
 may be conducted in any . parish, ward -or municipality, such
 
 business
 
 may be conducted therein despite the provisions of any local law prohibiting the sapie within a certain prescribed distance of any school”, etc. [Italics ours.]
 

 Every pertinent provision or expression in Act No. 17 of the First Extra Session of-1935 indicates that the purpose of the act was and is, not to authorize a parish or municipality to prohibit the possession of intoxicating liquor if it is not possessed for sale for beverage purposes, but to prohibit the sale of or traffic in such liquors. The possession of intoxicating liquors for sale for beverage purposes might be proof of a violation of an ordinance prohibiting the sale of or traffic in intoxicating liquors, because possessing intoxicating liquors for sale for beverage purposes is, essentially, a commencement of the offense of selling-intoxicating liquors. .
 

 In the case of State v. Bonner, 193 La. 387, 190 So. 621, it was held that selling intoxicating liquor was the equivalent of engaging in the business of selling intoxicating liquor. In that case the defendant was prosecuted for and convicted of selling intoxicating liquor in Lincoln Parish in violation of the same ordinance that the defendant in the present case is accused of violating. It was contended for the defendant, Bonner, (193 La. loc. cit. page 393, 190 So. loc. cit. page 623) that the first section of the ordinance, which prohibits the selling of intoxicating liquor, was null for the reason- that Act No. 17 of the First Extra Session of 1935 provides merely for pro-hibiting the
 
 business
 
 of selling intoxicating liquor. The court answered the contention (193 La. loc. cit. pages 394, 395, 190 So.
 
 *853
 
 loc. cit. page 623) thus: “From a reading of the Act as a whole, it appears that it was the intention of the Legislature to grant the various parishes, wards or municipalities the right to permit or prohibit the sale of intoxicating liquors, subject to a limit of alcoholic content and excepting sales for medicinal purposes when prescribed by a physician as a medicine, whenever a majority of the electors voted to that effect at an election held for such purpose.”
 

 According to the opinion rendered in the Bonner case, selling intoxicating liquors is, of itself, engaging in the
 
 business
 
 of selling intoxicating liquors. But it is not so with regard to possessing intoxicating liquors not for sale. On that subject it was said in the opinion in the Bonner case, 193 La. loc. cit. page 396, 190 So. loc. cit. page 623, that the ordinance prohibiting the business of sellirig intoxicating liquors did,- necessarily, prohibit the selling of intoxicating liquors. And so we have held that possessing intoxicating liquors for sale for beverage purposes is proof of the offense of engaging in the business of selling intoxicating liquors.
 

 It is argued in the brief for the State that this case is governed by the rule that it is only in cases where there is no evidence at all tending to prove a fact essential to a valid conviction that the supreme court has jurisdiction to annul a conviction for want of proof of the guilt of the defendant; and that the distinction is made between' the insufficiency of evidence and an actual lack 'of evidence of some fact the proof of which is essential to a valid conviction. That doctrine is well established, being founded upon the limitation in the last paragraph of Section 10 of Article VII of the Constitution, declaring that the jurisdiction of the supreme court shall extend to criminal cases on questions of law alone. The 'limitation excludes only such questions of fact as pertain directly to the question of guilt or innocence of the defendant, and does not exclude collateral questions concerning findings of fact on which the- trial judge has based a ruling, and which have no direct relation to the question of guilt or innocence. That is explained by the ■ declaration in Section 9 of Article XIX of the Constitution that the jury' in criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge. In the present case, the facts being admitted by the district attorney and by the judge who tried the case, the only question presented to this court is whether the admitted facts constitute a violation of the ordinance prohibiting engaging in the business of handling intoxicating liquor. The question is a clear-cut question of law, and is therefore within the jurisdiction of this court. The admitted facts did not constitute a violation'of the ordinance.
 

 The judgment of conviction and the sentence are annulled and the prosecution is ordered dismissed.