[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 212 
Plaintiff is a foreign corporation organized for the purpose and engaged in generating, distributing and selling electric current to the public. It is legally authorized to conduct and is conducting within the State of Louisiana the business for which it was created. Its generating plant is located at Sterlington in Ouachita Parish, from which electric current is transmitted over high powered lines to different parts of this and other states. In Winn Parish, Louisiana, near Winnfield, is located one of its substations.
Plaintiff alleged that at the request of the Defense Plant Corporation, a Federal agency, and in keeping with instructions from the Federal Power Commission to supply electric service to pumping stations situated near the Town of Many, in the Parish of Sabine, on the 20" pipe line being constructed by the War Emergency Pipe Lines for the Defense Plant Corporation, from Baytown, Texas, to or near Bayonne, New Jersey, it located, surveyed and laid out a route on which to construct a high powered electric line from said substation to near the Town of Many, Louisiana. It was also contemplated that service would be supplied to some industries and towns on or near the line. Rights of way were procured from all intervening land owners except the heirs, some 11 in number, of James Thompson Wallace and Olive Peters Wallace, both deceased. The route as surveyed and located, traversed diagonally the western portion of the S 1/2 of the SW 1/4, Section 15, Township 11 North, Range 3 West, in Winn Parish, owned by said heirs. They, or some of them, having refused to grant a right of way to plaintiff, the present proceedings to expropriate a perpetual right of way 100' wide over the land was instituted in the District Court of Winn Parish. Each of said owners was duly served with process.
In limine, six of the defendants filed special plea attacking the constitutionality of Act No. 110 of 1924, as amended by Act No. 156 of 1926. This law provides that corporations organized for the purpose of developing and transmitting electricity for power, etc., shall have the right to expropriate *Page 213 
rights of way, etc., for their needs and uses. The specific points of attack are these:
(1) That said Act violates and is contrary to the Fifth and Fourteenth Amendments of the Constitution of the United States and of Section 2 of Article 1 of the Constitution of this State, in that it confers or attempts to confer solely upon corporations the right to take private property for purposes other than public;
(2) That said Act authorizes the taking of private property for private use without the owner's consent and without due process of law, in violation of said Constitutional provisions;
(3) That it is contrary to and violates Section 4 of Article 4 of the Constitution of this State in that it is a special law; that it confers solely upon corporations, whether domestic or foreign, the exclusive right and privilege of expropriating property for electric transmission lines, etc., without requiring that the property should be for public purposes;
(4) That said Act provides for and makes unjust, unwarranted and illegal classification and discrimination between particular corporations on the one hand and individuals or other associations of persons and unincorporated organizations on the other hand;
(5) That the Act embraces more than one object in violation of Section 16 of Article 3 of the Constitution of this State in that its title indicates that the right to expropriate is given to certain kinds of corporations, where as the body of the Act provides that such right shall be exercised in the same manner and by the same proceedings imposed by law upon railroads and other quasi-public corporations;
(6) Alternatively, it is pleaded that Section 2 of the Act, as amended, is ambiguous, uncertain, meaningless, inoperative and admits of no enforcement because various and sundry forms and modes of procedure as well as limitations have been prescribed for and imposed upon railroads and other quasi-public corporations.
The plea of unconstitutionality and the alternative plea were overruled. Like action was had on exceptions of no cause and no right of action tendered by said defendants. Defendants answered under reservation of said pleas and exceptions. Practically all the essential allegations of the petition are generally denied. It is specifically averred that if the route of the line had been properly and economically laid out it would not have crossed defendants' property; the right to a perpetual right of way of any width is denied; and that if plaintiff is entitled to acquire such right of way its width should be limited to 50'. They finally plead that in the event plaintiff prevails herein the value of the land sought to be expropriated with timber thereon and consequent damage therefrom to the whole tract will not be less than $1,000, and that this amount should be awarded to them.
Judge Cass Moss, judge of the Eighth District Court, for legal cause, recused himself and appointed Judge H.W. Ayres, judge of the Second Judicial District Court, to act in the case.
Counsel for plaintiff in open court made tender to defendants of $180 as payment for the land included in the right of way, and consequent damages.
A jury of freeholders fixed the value of the land (3.80 acres) embraced in the sought right of way, plus damages, at $650. Judgment was rendered and signed in keeping with the jury's award and adjudicating to plaintiff a perpetual servitude and right of way 100' wide over the land as prayed for by it. This was on August 24, 1943.
After judgment was signed, plaintiff's counsel in open court moved for and was granted orders of appeal, suspensive and devolutive, returnable to the Supreme Court on September 8th and the amount of bonds for each appeal was fixed. Neither appeal was perfected under this order, but on September 4th, on plaintiff's petition, Judge Ayres in chambers, and without the parish of Winn, signed an order granting a devolutive appeal to this court, returnable September 20th and bond therefor was fixed. This appeal was perfected. The record was filed in this court on September 23d. Plaintiff prayed for and the court ordered that defendants be served with notice of appeal, etc.
Ten of the eleven defendants, through counsel, have moved to dismiss the appeal on the following grounds, to-wit:
(1) That under Dart's Statutes § 2864, R.S. § 1490, appeal in this case should have been taken and made returnable within fifteen days from date of judgment; that the appeal comes too late as it was made returnable 27 days after date of judgment *Page 214 
and through appellant's fault was lodged after expiration of said fifteen day period.
(2) That the granting of orders of appeal on August 24th, returnable to the Supreme Court, divested the court of jurisdiction in the cause and for this reason it was without the power and authority to grant a new or different order of appeal.
(3) That if it should be held that the second order of appeal was merely a correction of the first one with respect to the proper appellate court, the court was without authority to fix the return date beyond said fifteen day period.
(4) That the trial judge lacked authority to grant and sign an order of appeal in the absence of defendants' consent without the territorial jurisdiction of the Eighth District Court.
(5) That even if said second order of appeal be legal, defendants were not properly named for citation and citations were not actually served and returns made thereon in the manner prescribed and within the time fixed by law.
(6) In the alternative, it is urged that the appeal should be dismissed because plaintiff has acquiesced in the judgment by, prior to taking the present appeal, depositing the amount thereof in the hands of the sheriff; by paying all costs, and by withdrawing the $180 tendered in limine. Section 2864 of Dart's Statutes reads: "In case any appeal shall be taken to the Supreme Court from any judgment or order in such suit the said appeal shall be made returnable within fifteen days, and shall be taken up and tried in the Supreme Court by preference over all cases except those in which, the State being a party, preference is already given by law." (R.S. § 1490.)
Obviously, the first order of appeal was erroneous. The Supreme Court was without jurisdiction to entertain the appeal as the amount involved is much less than $2,000. The above quoted law, granting that it has application to appeals to courts of appeal, was designed to aid in the expeditious disposition of cases of this character. It requires appeals to be returnable to the appellate court fifteen days from the date the appeal is taken
and directs that the appeal be tried by preference over all other cases except those wherein the state is a party. The reason for eliminating to a measurable extent the delay incident to hearing and disposing of cases on appeal involving the expropriation of private property for public use is obvious. But this law does not declare that the appeal shall be taken within fifteen days fromthe signing of judgment as contended by appellees. The time limit governs the return date of the appeal only; and since there is no abridgment of the time within which the appeal could be taken the general law relative to appeals governs. Either side had twelve months from the date of judgment in which to take a devolutive appeal.
As plaintiff did not perfect either of the first appeals erroneously taken by it, clearly it had the right to procure another order of devolutive appeal after expiration of time for taking a suspensive appeal. The lower court was not divested of jurisdiction in the case from the bare fact that orders of appeal were taken. It retained jurisdiction until an appeal was perfected by the giving of solvent bond. In Police Jury of Parish of St. James v. Borne, 192 La. 1041-1044, 190 So. 124, 125, the court said and held: "However, the jurisprudence of the state upholds the right of an appellant who has obtained an order for both a suspensive and devolutive appeal, and has perfected neither by giving bond, to apply for and obtain, within the year, another order for a devolutive appeal. Vacuum Oil Co. v. Cockrell, 177 La. 623, 148 So. 898, and cases therein cited. See, also, Paramount Wood Products Co. v. Colonial Fire Underwriters,180 La. 886, 158 So. 7. The objection to the alleged delay in filing the transcript under the first order of appeal is therefore without merit."
This principle was affirmed in Buillard et al. v. Davis et al.,195 La. 684, 197 So. 273.
The foregoing disposes of points 1, 2 and 3 of the motion to dismiss.
Appellees' astute counsel does not in brief nor did he orally argue the principle involved in assignment No. 4. We are warranted in assuming that this point has been abandoned. Anyway, we think it without merit. Succession of Jacob Weigel, 17 La.Ann. 70; Ex parte Parker, 131 U.S. 221, 9 S.Ct. 708, 33 L.Ed. 123.
In support of assignment No. 5, in brief, counsel for movers says: "Plaintiff's appeal should be dismissed because defendants were not properly and timely cited even if the last order of appeal should *Page 215 
be held legal, regular and timely in all other respects."
If there was merit in this position originally it has been waived by moving, without reservation, to dismiss on other grounds. Commercial National Bank v. Sanders et al., 132 La. 174, 61 So. 155; Succession of Williams, 156 La. 704, 101 So. 113.
The deposit with the sheriff of the amount of the jury's award and payment of all costs of suit did not and could not constitute acquiescence in the judgment. This course is expressly authorized by Article 2634 of the Civil Code if the plaintiff in a case of this kind desires to, prior to hearing on appeal, take possession of the land involved therein. If the award is increased or decreased on appeal this law provides what shall be done in either event. In New Orleans, Fort Jackson G.I. Railroad v. Mrs. Ada McNeely, 47 La.Ann. 1298, 17 So. 798, this question was considered. The court disposed of it tersely by saying: "The effect of the deposit by the corporation is to pass title from the owner to the corporation. It does not relate to the right of appeal. It remains unaffected by the deposit."
The same was held in New Orleans Terminal Company v. Firemen's Charitable Association, 115 La. 442, 39 So. 437.
It is equally clear that the withdrawal of the tender money had no effect upon plaintiff's right to prosecute appeal.
For the reasons above assigned, the motion to dismiss is overruled.
The appellees who joined in the motion to dismiss, reserving their rights thereunder, answered the appeal. They assign as error the overruling of their plea of unconstitutionality and, alternatively, they plead that the servitude or right-of-way should be reduced to a width of 50' and its life or duration "limited to such time as the property may be needed and shall actually be used for the transmission of electric energy; and further, that the right to hold said right of way after abandonment for ten years or any part of a ten year period, should be forbidden". Lastly, in the alternative, appellees pray that the jury's award be increased to $850.
 Plea of Unconstitutionality.
Act No. 110 of 1924, as amended by Act No. 156 of 1926, so far as here pertinent, reads as follows:
"Be it enacted by the Legislature of Louisiana, That corporations whether domestic or foreign, organized for the purpose of developing and transmitting electricity for power, lighting, heating and other such uses, shall have the right to expropriate rights-of-way for their power plant sites, necessary buildings, transmission lines, stations, sub-stations along their transmission lines and all necessary buildings thereto; * * *.
"That this right of expropriation shall be exercised in the same manner and by the same proceedings and under the same limitations now imposed by law of railroads and other quasi-public corporations."
It is argued that this statute violates Section 2 of Article 1 of the Constitution of Louisiana, which reads: "No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid," in that it authorizes the taking of private property by corporations for purposes other than public.
Supporting this position, it is contended that nowhere in the Act, as it now stands, "does there appear any phrase, word or syllable to the effect that the property to be expropriated * * * shall be for public purposes, or for public use or publicbenefit." This is true but we think their omission does not unfavorably affect the law's validity. Reference to Article 2630
of the Civil Code, the general law that confers upon railroads and other quasi-public corporations the right of eminent domain, discloses that none of the italicized words nor their equivalent appears therein, yet no one has challenged, so far as we have knowledge, the right of the corporations named in said Article to expropriate property for their needs and uses. It goes without saying that the business of such corporations is of a public character, one in which the public has an interest and through the operations of which will receive at least an indirect benefit. This also applies to the several acts of the Legislature conferring upon corporations created for different purposes the right of eminent domain.
Now, it seems beyond doubt that a corporation "organized for the purpose of developing and transmitting electricity for power, lighting, heating", etc. and which *Page 216 
engages in such purposes, is engaged in a public business in which the public is greatly interested and from which it is possible that far reaching benefits will accrue. This being true, property needful for the conduct of such business or businesses and which has to be taken in the manner ordained by law, is taken and acquired for "public purposes" in keeping with the above quoted section of the Constitution.
Point of attack No. 2 is without merit. What we have said in disposing of point No. 1 is applicable to point No. 2. The law providing summary proceedings to condemn private property for public purposes is valid and constitutional. See State of Louisiana ex rel. Orleans Railroad Company et al. v. Henry L. Lazarus, Judge, 34 La.Ann. 864, 865. The property was not taken "without due process of law". Every reasonable safeguard is provided by law in cases of this character to protect the owner in his private rights. These safeguards were not overlooked in the instant case. Since private property may be taken for public purposes, the interest of the individual being subordinate to that of the public, the law goes no further than to vouchsafe to him just compensation for his property and incidental damages from the taking. When this is done, the ends of the law are met. This law operates uniformly upon all persons.
The statute attacked is not a special law within the meaning of Section 4 of Article 4 of the Constitution. This section enumerates the various subjects on which the Legislature shall not pass any local or special law. The subject matter of the attacked statute is not included therein.
The charge of unconstitutionality embraced in the latter part of charge No. 3 is partially answered in the discussion under point No. 1, supra, and will be further answered in our discussion of charge No. 4 below.
Charge No. 4, in effect, is that the Legislature by granting only to corporations engaged in the business described in the Act, the right to expropriate, thereby tacitly denying such right to individuals, partnerships and other unincorporated association of individuals likewise engaged, created an unjust and illegal classification and discrimination.
The Legislature saw fit to confer the right herein discussed upon corporations only, and thereby denied such right to natural persons or unincorporated entities. In doing so it exercised, constitutionally, a power inherent in sovereignty. No one has just cause to complain of its action because it does not amount to illegal or unfair discrimination or classification as to those to whom the right is denied, nor does it amount to denial of constitutional guaranties of equality.
If the Act in question is invalid under present attack, then Article 2630 of the Civil Code and many acts of the Legislature, above referred to, are likewise affected because in them the right to expropriate property is solely conferred upon corporations.
The fact that for so long a time no attack has been made against this article of the Civil Code on the ground of unconstitutionality, argues strongly in favor of its validity. It reflects a general opinion that the law is a valid exercise of Legislative power. If this be true, then the Act in question enjoys the same status. Anent this question we quote from 18 American Jurisprudence, pages 649, 650, verbo "Eminent Domain" Division C, "Quasi-Public Bodies and Individuals", as follows:
"Since the legislature cannot in every case supervise the condemnation of property for public use, it may confer the power upon agencies and does frequently do so. But only the sovereign power, or one to whom it has been delegated the right, can take property without the consent of the owner.
* * * * * *
"In addition to municipal corporations and political subdivisions, the legislature may ordinarily constitutionally delegate the power of eminent domain to individuals and corporations, usually public service corporations — that is, corporations organized and existing under the authority of a state to serve the public, by supplying the people on equal terms and for a reasonable compensation with services or commodities and articles which, because of their nature, location, or manner of production and distribution, can be best produced and distributed by some organized form of enterprise operating under state control."
And in 16 Corpus Juris Secundum, Constitutional Law, page 912, § 462, we find, pertinent to the question, the following: "Eminent domain. Constitutional prohibitions of the grant of special privileges do not forbid the grant to corporations or to a particular corporation, of the right of eminent *Page 217 
domain for a public purpose, and such grants have been sustained where they were made to a foreign corporation on the same terms as to a domestic corporation, where they conferred larger powers or appropriation on corporations engaged in one kind of public service than on corporations engaged in another kind, and where they authorized electric railroad companies to condemn the right to cross steam railroads."
The test of the constitutionality of a law of the character involved herein is: Is the classification or discrimination reasonable, not arbitrary? State v. Rogers, 148 La. 653, 87 So. 504.
Charge No. 5 is not discussed in appellees' brief. Presumably it has been abandoned. It is not well founded. The Act embraces but one object and that object is clearly indicated in the title.
Charge No. 6 relates to the alleged ambiguity, etc., in Section 2 of the Act. This section simply provides, by reference, the method and manner of exercising the right of expropriation conferred by Section 1 thereof. It says the right "shall be exercised in the same manner and by the same proceedings and under the same limitations now imposed by law of (on) railroads and other quasi-public corporations."
This provision means that in exercising the right bestowed by the Act, the general law governing expropriations, embraced in Civil Code, Articles 2626 to 2641, inclusive, must be followed. We find a like or similar provision in the many acts conferring the extraordinary right of expropriation upon corporations of different characters.
The testimony clearly shows it to be necessary for the purposes of a high powered line of the character plaintiff will maintain between the substation near Winnfield and the Town of Many, that the right of way be 100' wide. This is the invariable width for lines of this character. This width is necessary to protect the wires from injury from falling trees along the right of way.
It is argued that since Act No. 268 of 1916 fixes a limit of 50' on the width of right of way to be expropriated by corporations engaged in developing hydro-electric power, this limitation should be observed in the present case as Section 2 of the 1924 Act ordains that the right of way expropriated shall be exercised "under the same limitations now imposed by law [on] railroads and other quasi-public corporations." We do not agree with this contention. The 1916 Act also authorizes corporations created to construct and operate canals for irrigation and other purposes to expropriate rights of way not in excess of 600' in width. It could as well be argued that this limitation of 600' applies to corporations referred to in the 1924 Act as amended.
Defendants complain of the adjudication of the right of way in perpetuity. Of course, this means that the servitude continues in effect so long as the land embraced therein is used for the purposes for which it was expropriated. It lapses for non-use for a period of ten years. Beyond this we are unable to go in considering appellees' complaint. Conditions might arise that would give right to the fee owners, prior to the expiration of ten years, to reclaim the land covered by the servitude.
 The Merits
The eighty acre tract owned by defendants is situated in the hill country. It once carried virgin growth of pine and hardwood trees but was denuded of this timber fifteen or twenty years ago. The small trees left standing have grown to merchantable sizes. The tract is of the character commonly referred to as "cut over pine land".
About forty years ago the owners of the land gave a right of way to the Louisiana and Arkansas Railway Company that enters the tract near the center of the east forty and makes exit a short distance west of the northwest corner of that forty. This right of way traverses the tract a distance of approximately 1,500' and divides it. As best we can tell from plats in the record there are approximately 18 acres north of the right of way.
The right of way awarded plaintiff crosses the west line of the eighty acre tract about one-third the distance from its southwest corner and makes exit a short distance from the northeast corner of the west forty. There are approximately 16 acres north and west of the right of way. To make use of its right of way plaintiff simply clears it of all timber and erects two poles 14' apart, every 600', and then strings lines by attaching to cross arms. The surface of the land is not otherwise disturbed. *Page 218 
The two rights of way divide the 80 acre tract into three distinct pieces. The east side of the tract is one-half mile from the Town of Winnfield. It is the same distance from the nearest paved highway. The tract, as a whole, is suited for agricultural purposes but no part of it has been put to that use.
The testimony relative to the value of the land, timber thereon and damages consequent to use of the right of way, as is the rule in cases of this character, is extremely inharmonious; in fact, irreconcilable.
In addition to the taking of the 3.80 acres covered by the right of way there was created thereby a triangle with area of two and one-half acres adjacent to the north line of the tract, having for its other two sides the boundaries of the rights of way, the value of which 2 1/2 acres, to defendants has for all practical purposes been destroyed.
The value of the whole tract of land is variously fixed by the witnesses. In view of its location with respect to Winnfield and the paved highway, we believe a value of $20 per acre fair. The acreage embraced in the right of way, plus the above mentioned triangle is 6.3, which at $20 per acre makes a total value of $126.
The timber, which includes that suited for saw logs, telephone poles, cross ties and pulp wood, on the right of way, the testimony fairly well establishes, was worth $210. This leaves for determination the amount of damages to the land resulting from its severance by the right of way.
It is conceded that the presence of the railroad right of way across the original tract inflicted some damages thereto because it divided the tract into two parts. Therefore, in determining the quantum of damages consequent to the right of way awarded to plaintiff we need not consider that part of the tract included in and north of the railway right of way except the triangular tract of two and one-half acres above mentioned. The acreage west and south of the railway right of way is approximately sixty.
The extent of damages to this sixty acre tract from its division into two tracts of approximately 18 and 38 acres, is difficult of definite fixing; in fact, it cannot be fixed with mathematical certainty. The opinions of the witnesses thereon are at material variance. It is obvious some damage resulted from the division of the tract.
After careful study of the conflicting testimony and weighing all other pertinent factors, we think the measure of damage not in excess of one-fourth of the value of the 60 acre tract or $300.
The jury did not make separate findings on the questions of value and damage but combined the two. But since there is small difference between what we think defendants entitled to recover and that fixed by the jury, we are disposed to follow its judgment. This course is and should be generally adopted by appellate courts in cases of this character. Unless the jury's award is manifestly wrong it should not be disturbed.
For the reasons herein assigned, the judgment appealed from is affirmed, and plaintiff is cast for all costs.