473 So.2d 51 (1985)
Charles SLAY, Jr., Individually and In His Capacity as the Assessor for Rapides Parish, Louisiana
v.
LOUISIANA ENERGY AND POWER AUTHORITY and Lafayette Public Power Authority.
No. 85-CA-0953.
Supreme Court of Louisiana.
July 22, 1985.
Ronald J. Judice, Mouton, Roy, Carmouche, Bivens, Judice & Henke, Lafayette, Michael R. Fontham, Paul L. Zimmering, Catherine N. Garvey, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, H. Lee Leonard, William J. Friedman, Jr., Voorhies & Labbe, Lafayette, for defendant-appellant.
James J. Brady, Gravel & Brady, Alexandria, Robert Abbott, III, Baton Rouge, Frank R. Bolton, Alexandria, for plaintiff-appellee and defendant-appellee.
CALOGERO, Justice.
The District Court for Rapides Parish declared that La.R.S. 33:4545.3[1] and La. R.S. 33:4172, portions of more comprehensive statutes which created public power authorities as political subdivisions of the state, are unconstitutional, and that properties owned by those authorities are not exempt from ad valorem property taxation. Additionally that court held that La.R.S. 33:4545.24 which specifically exempts from property tax any projects owned by one of those authorities (LEPA) contravenes La. Const. art. III, § 12(5).
*52 The aggrieved bodies have appealed that decision to this Court.[2]
Louisiana Energy and Power Authority, LEPA, a statewide public power authority, was created by the State Power Authority Act[3] "as a political subdivision of the State... to provide facilities for the generation and/or transmission of electric power and energy ... for the benefit of participating municipalities..."[4] LEPA is authorized to cooperate with municipalities, investor owned electric power companies and electric power cooperative associations or corporations within the state in the development, ownership and operation of electric generating units.[5]
Lafayette Public Power Authority, LPPA, was created as a political subdivision of the state by the City Council of the City of Lafayette pursuant to authority granted by the Legislature (La.R.S. 33:4170-74) under La. Const. art. VI, § 19.[6] The city is authorized to join with other electric public utility companies "in the financing, construction, maintenance, and operation of joint electric power ... facilities as owners ..."[7]
Pursuant to this statutory authorization, in 1977 when Rodemacher 2, a 530 megawatt low sulfur coal fired electric generating unit near Boyce, Louisiana in Rapides Parish, was under construction by a subsidiary of Central Louisiana Electric Company (CLECO), an investor owned utility, LPPA acquired a fifty per cent ownership interest in the Rodemacher 2 plant. LEPA, in 1982, acquired a twenty percent ownership interest in Rodemacher 2. The unit is therefore owned in indivision by LPPA, LEPA and CLECO.[8]
The LPPA share in the plant serves the needs of the City of Lafayette's municipal electric system. It also produces revenue through the sale of excess power to the City of Alexandria, one of the sixteen cities which are members of LEPA. The plant, by virtue of LEPA's interest therein, also furnishes most of the energy requirements of each participating member city of LEPA.
In 1984, Charles Slay, Jr., assessor of Rapides Parish, placed on the ad valorem tax rolls and assessed the portions of Rodemacher 2 owned by LEPA and LPPA.[9] Appeals were taken by LEPA and LPPA to the Louisiana Tax Commission. The Commission held, favorably to LEPA and LPPA, that "the portion of Rodemacher Unit No. 2 owned by LEPA and LPPA is public property, used for public purposes and exempt from ad valorem property tax under Article VII, Section 21(A) of the Louisiana Constitution of 1974."[10]
*53 The assessor took an appeal to the Ninth Judicial District Court for the Parish of Rapides. The district court reversed the Tax Commission. The court found that no provision was made in La. Const. art. VI, § 44(2)[11] for "authorities" to be classified as political subdivisions. Thus, La.R.S. 33:4545.2[12] and La.R.S. 33:4172,[13] each of which label power authorities as political subdivisions, are unconstitutional as they conflict with La. Const. art. VI, § 44. Based on this reasoning, the court held that LEPA and LPPA, being authorities, and not, constitutionally, political subdivisions, could not have their ownership interest in the plant classified as public property.[14] Their interests therefore are subject to the ad valorem tax, according to the district court.
On appeal, LEPA and LPPA contend their ownership interest in the generating unit constitutes public property since both are public power authorities created as political subdivisions of the state pursuant to statute. La. Const. art. VI, § 44(2) defines political subdivision as "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions." (Emphasis provided.) As noted, the trial judge found that this definition of political subdivision did not include an "authority" and that the Legislature was without the power to expand upon the Constitutional definition of political subdivision.
That ruling is incorrect and will be reversed. The trial judge erred in his limited interpretation of the definition of political subdivision. A political subdivision is a subdivision of the state to which has been delegated certain functions of local government. Commander v. Board of Commissioners of Buras Levee District, 202 La. 325, 11 So.2d 605 (1942). No basis exists for determining that the "authority" must be specifically listed in the definition to be included. The entities therein listed are illustrative, not exclusive. And, even more pertinently, the decision ignores the phrase "any other unit of local government." These "authorities," created by statute, do in fact constitute other "unit[s] of local government."
La. Const. art. VII, § 21(A) exempts "public property used for public purposes" from ad valorem taxation. This general exemption includes all property owned by the state and the various political subdivisions of the State. See Warren County, Miss. v. Hester, 219 La. 763, 54 So.2d 12 (1951). The language of the article is broad. The records of the 1973 Constitutional Convention establish that the framers regarded the exemption as being simply stated and self-explanatory.[15]
We must therefore determine whether the LEPA and LPPA property falls within the purview of this Constitutional article. In order to be exempt under the Article the property must be public, and it must be used for a public purpose.
*54 In Foreman v. Vermilion Parish, 336 So.2d 986 (La.App. 3rd Cir.1976), the Third Circuit held that regardless of its use, real estate owned by a police jury was "public property". This Court in State v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725 (1938), found that property owned by a housing authority was exempt from taxation as public property. The Court held:
Private property is that which one owns, something that belongs absolutely and exclusively to an individual... The property of housing authorities is in no sense private property. But in a real sense it is public property because it is employed for the sole benefit and advantage of all members of society.[16]
Surely then, the undivided interest in the Boyce, Louisiana electric power generating plant owned by political subdivisions of the state of Louisiana, LEPA and LPPA, constitute public property.
The second requirement for ad valorem tax exemption is that the public property be used for a public purpose. Providing electric service is a public function. In Louisiana Power and Light Co. v. Mosley, 18 So.2d 210 (La.App. 2nd Cir.1944), the Second Circuit Court of Appeal held that a private electric company may expropriate property[17] pursuant to statutory authorization because it serves a public purpose. The court stated:
Now, it seems beyond doubt that a corporation "organized for the purpose of developing and transmitting electricity for power, lighting, heating," etc. and which engages in such purposes, is engaged in a public business in which the public is greatly interested and from which it is possible that far reaching benefits will accrue. This being true, property needful for the conduct of such business ... is taken and acquired for "public purposes"...
Courts have also looked to a statutory authorizing provision, La.R.S. 12:303(12), in determining that a private electric cooperative had the right to expropriate property. The court in Southwest Louisiana Electric Mem. Corp. v. Simon, 207 So.2d 546 (La. App. 3rd Cir.1967) said, "in view of the provision that they are authorized to furnish governmental agencies and political subdivisions with the needed energy, it is the conclusion of the court that they do serve a public purpose within the meaning of the Constitution..." See also Goins et al. v. Beauregard Electric Cooperative, Inc., 44 So.2d 715 (La.App. 1st Cir.1950) and Central Louisiana Electric Co. v. Pugh, 96 So.2d 523 (La.App. 1st Cir., 1957).
LEPA was created "to insure an adequate, reliable and economical supply of electric power and energy to the participating municipalities."[18] In the case of LPPA, the Legislature mandated a liberal construction of the authorizing statute so that "greater economy and efficiency in the providing of electrical and energy services to the citizens of the municipality may be achieved."[19] Providing electric service to municipalities and its citizens serves a public purpose.
For the foregoing reasons we hold that the public power authorities, LEPA and LPPA, are political subdivisions of the State of Louisiana, constitutionally created by statute (LEPA) and by statute and ordinance (LPPA), and that their respective ownership interests in Rodemacher 2 constitute public property used for public purposes, exempt from ad valorem taxation by virtue of Article VII, § 21(A) of the Louisiana Constitution of 1974.

*55 Decree

The judgment of the district court declaring unconstitutional La.R.S. 33:4172, La.R.S. 33:4545.3 (in fact La.R.S. 33:4545.2) and La.R.S. 33:4545.24 is reversed. The ruling of the Louisiana Tax Commission is reinstated.
DISTRICT COURT JUDGMENT REVERSED; TAX COMMISSION RULING REINSTATED.
WATSON, J., concurs and assigns reasons.
WATSON, Justice, concurring.
There is no doubt that the result is correct as a matter of law, but the assessor is to be commended for spotlighting the serious problem of mixed public-private enterprise and ownership with the resulting tax dilemma for local government. Any change in the legal consequences is up to the legislature and the people, not the courts.
NOTES
[1] The trial judge obviously meant La.R.S. 33:4545.2, the statute which created LEPA as a political subdivision. He inadvertently called it R.S. 33:4545.3, which merely defines terms used in the chapter.
[2] La. Const. art. V, § 5 grants the right of direct appeal to this Court when a law or ordinance has been declared unconstitutional.
[3] La.R.S. 33:4545.1 et seq.
[4] Sixteen cities are members of LEPA. They include: Alexandria, Houma, Jonesville, Lafayette, Morgan City, New Roads, Plaquemine, Rayne, Winnfield, Natchitoches, Minden, Abbeville, St. Martinville, Gueydan, Kaplan and Erath. These cities own municipal electric systems and are able to obtain electricity from LEPA at a lower cost than when they generate it themselves.
[5] La.R.S. 33:4545.2.
[6] La. Const. art. VI, § 19 provides:

Subject to and not inconsistent with this constitution, the legislature by general law or by local or special law may create or authorize the creation of special districts, boards, agencies, commissions, and authorities of every type, define their powers, and grant to the special districts, boards, agencies, commissions, and authorities so created such rights, powers, and authorities as it deems proper, including, but not limited to, the power of taxation and the power to incur debt and issue bonds.
[7] La.R.S. 33:4170.
[8] LPPA's share of the unit is 50%, LEPA's share is 20% and CLECO's share is 30%.
[9] The property owned by CLECO would normally be assessed. However, the Department of Commerce and Industry granted CLECO a ten year exemption from property taxation pursuant to Const. Art. VII § 21(F).
[10] La. Const. art. VII, § 21(A) provides:

In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
(A) Public lands; other public property used for public purposes.
[11] La. Const. Art. VI § 44(2) provides "political subdivision" means a parish, municipality, and any other unit of local government, including a school board and a special district authorized by law to perform governmental functions.
[12] La.R.S. 33:4545.2 provides in part "... [there] is hereby created the Louisiana Energy and Power Authority, hereinafter referred to as the `Authority', as a political subdivision of the State of Louisiana ..."
[13] La.R.S. 33:4172 provides in part "under the provisions of Art. 6, Sec. 19 of the Constitution of 1974, the governing authority of any municipality may create a public power authority as a political subdivision of the State of Louisiana constituting a legal entity separate and apart from the municipal corporation."
[14] The court relied in part on La.C.C. art. 450 (which provides that "[p]ublic things are owned by the State or its political subdivisions in their capacity as public persons") in concluding that public property is not that owned by an "authority", but rather, only property owned by the state or a political subdivision of the state.
[15] Records of the La. Const. Convention of 1973: Convention Transcripts Vol. 8 p. 1905 and following. Mr. Planchard in introducing this section stated: "I think it's self-explanatory, and there should be no question here." See Vol. 8, p. 1905.
[16] The jurisprudence even includes Martin v. Louisiana Central Lumber Co., 150 La. 157, 90 So. 553 (1922), wherein property of an academic institution incorporated by the Legislature was held to be public property.
[17] Under both the 1921 and the 1974 Constitutions, property may not be expropriated except for a "public" purpose. La. Const. of 1921 art. 1 § 2, La. Const. of 1974 art. 1 § 4.
[18] La.R.S. 33:4545.2.
[19] La.R.S. 33:4174.