Dear Mr. Orlesh:
You have requested an opinion of the Attorney General regarding the ad valorem tax exempt status of lands and other properties belonging to the Port of New Orleans (the "Port"). You specifically ask that we review and reconsider Attorney General Opinion No. 93-176 issued by this office on August 25, 1993.
The issues presented in the above-referenced opinion were the following:
 (1) Are privately owned batture lands subject to assessment for ad valorem
taxes?
 (2) Are batture lands owned by a public body (e.g., the Port) subject to an assessment of ad valorem taxes?
 (3) Are structures owned by the Port located on publicly owned batture lands, and leased to a third party, subject to an assessment of ad valorem taxes?
As you are well aware, batture, in the case of the Mississippi River, constitutes that portion of the land and/or bank of a river which lies between the ordinary low and ordinary high stages of the water. Ownership of the batture may lie within either the private or public domain.
Opinion No. 93-176 concluded, with regard to the first issue, that privately owned batture property is subject to ad valorem taxation, citing Mathis v. Board of Assessors,16 So.2d 454 (La. 1894). We concur in, and reaffirm, this conclusion.
With regard to the second issue, Opinion No. 93-176 concluded that in order for publicly owned batture land to be tax exempt, it must be used for a public purpose. In support of this conclusion, the opinion cites Slay v. Louisiana Energy andPower Authority, 473 So.2d 51 (La. 1985) andSchulingkamp v. Heaton, 455 So.2d 1181 (La.App. 4th Cir. 1984).
Article VII, Section 21 of the 1974 Louisiana Constitution (the "Constitution"), in pertinent part, the following:
 "§ 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
 (A) Public lands; other public property used for public purposes."
The above provision is distinguishable from its predecessor found in Article IX, Section 4 of the 1921 Constitution. It read:
 "§ 4. The following property, and no other, shall be exempt from taxation:
 1. Public property. All public property."
As can be seen from the above, the 1974 provision distinguished between two classifications of public property, to wit:
(1) Public lands; and
(2) Other public property used for public purposes.
The fact that the Constitution imposes no requirement that public lands be used for public purposes leads us to the conclusion that any and all public lands, including batture, are uncategorically exempt from ad valorem taxation regardless of the purpose for which said public lands are used. We find support for this position in Slay v. Louisiana Energyand Power Authority, cited supra. Therein, the Court, citingForeman v. Vermillion Parish, 336 So.2d 986 (La.App. 3rd Cir. 1976), noted:
 " . . . the Third Circuit held that regardless of its use, real estate owned by a police jury was `public property'." [Emphasis added.]
In finding that the publicly owned batture must be used for a public purpose in order to be tax exempt, Opinion No. 93-176, as previously noted, relied upon the Slay andSchulingkamp cases. A review of both cases indicate that the public property at issue was, in Slay, an interest in a low sulphur coal fired electric generating unit and, inSchulingkamp, a houseboat located in the City of New Orleans at the New Orleans Marina. Thus, both of the properties in question constitute improvements, separate and apart from the public lands on which they were situated. We believe the issues presented in these cases to be distinguishable from the issue presented herein — i.e., the ad valorem
taxation, vel non, of publicly owned batture (i.e., public land). In accord, see Attorney General Opinion No. 89-599, which concluded that it would be legally permissible to have separate assessments for tax exempt land owned by the City of New Orleans and non-tax exempt leasehold improvements constructed by a third party. See also Attorney General Opinion No. 80-1140 which held that land donated to the City of New Orleans is not subject to ad valorem
taxation.
Assuming, arguendo, Article VII, Section 21(A) is deemed ambiguous, the interpretation of those charged with its administration or enforcement over a long period of time is accorded great weight. State ex rel, Singleman v.Morrison, 57 So.2d 238 (La.App. Orl. Cir. 1952), Writ Denied.
I have been advised by legal counsel for the Louisiana Tax Commission (the "Commission") that it has historically been the position of the Commission that public lands are, indeed, exempt from ad valorem taxes regardless of the purpose(s) for which they may be used. To the extent Opinion No. 93-176 is inconsistent herewith, it is recalled.
With regard to the third issue, Opinion No. 93-176 concluded that other public property (i.e., not public lands) would be subject to ad valorem taxes if said property was not used for a public purpose or if it did not fall within one of the other constitutionally created tax exempt classifications found in Article VII, Section 21. We concur in, and reaffirm this conclusion.
Initially, it should be noted that the authority to determine whether a particular taxpayer may be exempt from the payment of ad valorem taxes is a factual determination exclusively reserved by Article VII, Section 18(E) of the Constitution to the assessor, the parish governing authority, the Louisiana Tax Commission and the courts. See Attorney General Opinion Nos. 93-392, 92-660, 89-599, and 76-114. While the Attorney General does not have the authority to grant tax exemptions, the following represents applicable laws and jurisprudence which may be used by the appropriate authorities in making individual decisions.
The jurisprudence of this state has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body, and against the taxpayer desiring the exemption. Any plausible doubt is fatal. Thus, an exemption, being an exceptional privilege, must be clearly, unequivocally, and affirmatively established.Zapata Haynie Corp. v. Larpenter, 583 So.2d 867
(La.App. 1st Cir. 1991), Writ Denied.
As noted above, Article VII, Section 21(A), when referring to the tax exempt status of public property, other than public lands, imposes a two-fold requirement that:
(1) Title to the property must vest in the public and
(2) The property must be used for a public purpose.
We believe the necessity of meeting both criteria is clearly recognized by the Louisiana Supreme Court inSlay. However, you contend in your request that the Court in Slay only addressed the issue of the defendant's status as a "public body", and did not discuss the second criterion of "public use". We disagree.
Justice Callegaro, writing for the Court, initially addressed the issue of the public status, vel non, of the Louisiana Energy and Power Authority (LEPA) and the Lafayette Public Power Authority (LPPA), and determined that both constituted units of local government and/or political subdivisions of the state. Thus, property owned by LEPA and LPPA constituted "public property" for purposes of Article VII, Section 21(A).
Shifting its focus to the second requirement, the Court stated:
 "The second requirement for ad valorem tax exemption is that the public property be used for a public purpose. Providing electric service is a public function . . .
 LEPA was created `to insure an adequate, reliable and economical supply of electrical power and energy to the participating municipalities.' In the case of LPPA, the legislature mandated a liberal construction of the authorizing statutes so that `greater economy and efficiency in the providing of electrical and energy services to the citizens of the municipality may be achieved.' Providing electric service to municipalities and its citizens serves a public purpose.
 For the foregoing reasons we hold that the public power authorities, LEPA and LPPA, are political subdivisions of the State of Louisiana, constitutionally created by statute (LEPA) and by statute and ordinance (LPPA), and that their respective ownership interests in Rodemacher 2 constitute public property used for public purposes, exempt from ad valorem taxation by virtue of Article VII, § 21(A) of the Louisiana Constitution of 1974." [Emphasis added.]
Likewise, in Schulingkamp v. Heaton, cited supra, the Court noted:
 "Allowing improvements on tax exempt property
to be themselves tax exempt when used for a private purpose would lead to a very inequitable result in this City's tax scheme." [Emphasis added.]
This office has previously recognized that the fact that public property is leased to a private entity does not preclude it from being used for a public purpose so as to be exempt. See Attorney General Opinion Nos. 93-392 and 89-599. We note, for your reference, the following cases to be illustrative of purposes which have been deemed tax exempt public, as well as non-exempt private.
In Charleston County Aviation v. Wasson,289 S.E.2d 416 (S.C. 1982), the Constitution provided that exemption from taxation would extend to "all property of the state, counties, municipalities, school districts and other political subdivisions, if the property is used exclusively for a public purpose." The question therein was whether property of the Charleston County Aviation Authority was exempt. The Court observed that property used by a private business entity does not preclude the use from being for a public purpose. It was concluded that air transportation, land transportation, a place to park, and available food all are customarily performed by private business, but are recognized as a necessary part of an airport and incidental to the public use. However, two of the lessees that provided a terminal, fuel and repair facilities, and other incidental services and charters were found to be used for a non-exclusive public purpose in that "the primary beneficiaries of the use of this property are the two private companies." The Court found, as a general rule, a public purpose has for its objective the promotion of public health, safety, morals, general welfare, security, prosperity and contentment of all inhabitants or residents, or at least a substantial part thereof.
In State v. City of Columbia, 115 S.C. 108,104 S.E. 337 (1920), the Court held the leasing of a theater in the City Hall to a private person still qualified as a public purpose where the revenue was incidental, for it was an expedient way of giving effect to the public purpose for which the theater was often used. Therefore, when the use is for a public purpose, an incidental private use or benefit will not negate or alter that public purpose and use of the property.
Similar reasoning is seen in Tri-County Public AirportAuthority v. Board of County Commissioners, 245 Kan. 301,777 P.2d 843 (1989) and Salina Airport Authority v. Board ofTax Appeal, 14 Kan. App. 2d 80, 761 P.2d 1261 (1988), where the Court sought to determine if there was governmental use, stating the mere fact the authority received rental income does not constitute "use" within the statute when there was no public function of government being carried out upon the lease property.
Likewise, in Town of Harrison v. Co. ofWestchester, 246 N.Y.S.2d 593, 196 N.E.2d 240 (1963), the Court held while revenues from hangers leased for private use help to defray the expense of operating the public airport, they were not sufficient to render the use of the property public since the property itself must be devoted to a public use. See also, BDT Inc. v. Moore, 260 Ark. 581, 543 S.W.2d 220
(1976).
In Lake Charles Harbor Terminal District v.Henning, 409 F.2d 932 (5th Cir. 1969) the Court found that land to be expropriated by a harbor district which would be used for a bulk handling complex devoted to storage of liquids in bulk form constituted a public use even though, initially, only one user might take advantage of the storage facility.
In order to assist in a determination of whether property qualifies for exemption, the actual activities of the lessee, the purpose of the business' charter, and use of the particular portion of the property under consideration should be examined as to how these factors relate to a public purpose. Each must be examined on an individual basis.
It must be concluded that property cannot be exempt when it serves no governmental function or is not reasonably incidental to a governmental function. The fact that the property will produce revenues which go toward financing governmental functions, alone, will not be sufficient to bring property within the purview of the exemption.
We trust the above discussion will assist you in distinguishing between public and non-public use.
With kindest regards, I am
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ___________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob, III/cla
cc: Honorable Thomas L. Arnold Assessor, Parish of Orleans Fifth District
Date Received: Date Released: August 6, 1996
Robert E. Harroun, III Assistant Attorney General