Dear Mr. Adams:
Reference is made to your recent request for an opinion of this office regarding the Jefferson Parish Economic Development and Port District's ("JEDCO") issuance of taxable revenue bonds (the "Bonds") pursuant to Chapter 20 of Title 34 and Sections 991 to 1001, inclusive, of the Louisiana Revised Statutes of 1950, as amended, to expand an existing warehouse facility in Jefferson Parish (the warehouse facility being referred to herein as the "Project") for Consolidated Companies, Inc. (the "Company"). You advise that JEDCO intends to acquire the Project and lease it to the Company for payments sufficient to pay debt service on the bonds, plus other payments.
JEDCO asserts that in accordance with legal authority, the Project will not be subject to ad valorem taxes during the term of the bonds while JEDCO owns it, and that JEDCO has the authority to negotiate a payment to be made by the Company in lieu of taxes, if JEDCO so desires. Specifically, on behalf of JEDCO, you have requested an opinion of this office regarding the elimination of ad valorem taxes on the property comprising the Project while it is owned by JEDCO.
La. Const. (1974) Art. VII, Sec. 21 provides a list of property that shall be exempt from ad valorem taxation. "Public lands; other public property used for public purposes" is included within the list of exempt property. Article VII, Section 21(A), when referring to the tax exempt status of public property, other than public lands, imposes a two-fold requirement that:
(1) Title to the property must vest in the public; and
(2) The property must be used for a public purpose.
The necessity of meeting both criteria was clearly recognized by the Louisiana Supreme Court in Slay v. Louisiana Energy and Power Authority,473 So.2d 51 (La. 1985). Justice Calogero, writing for the Court, initially addressed the issue of the public status of the Louisiana Energy and Power Authority (LEPA) and the Lafayette Public Power Authority (LPPA), and determined that both constituted units of local government and/or political subdivisions of the state. Thus, property owned thereby constituted "public property" as required by Art. VII, Section 21(A). Shifting its focus to the second requirement, the Court stated:
 "The second requirement for ad valorem tax exemption is that the public property be used for a public purpose. Providing electric service is a public function . . .
 For the foregoing reasons, we hold that the public power authorities, LEPA and LPPA, are political subdivisions of the State of Louisiana, constitutionally created by statute (LEPA) and by statute and ordinance (LPPA), and that their respective ownerships interest in Rodemacher 2 constitute public property used for public purposes, exempt from ad valorem taxation by virtue of Article VII, § 21(A) of the Louisiana Constitution of 1974."
This office has previously recognized that the fact that public property is leased to a private entity does not preclude it from being used for a public purpose so as to be exempt. See Attorney General's Opinions Nos. 93-392 and 89-599. In accord: Attorney General's Opinion No. 97-196.
JEDCO is a "special parish district", within Jefferson Parish, and is "a body politic and political subdivision of the state of Louisiana", granted certain "rights, powers, privileges, and immunities granted to political subdivisions", specifically for "industrial, commercial, research, and economic development purposes". LSA-R.S. 34:2021A. In accordance with LSA-R.S. 34:2022J, the JEDCO Board of Commissioners serves:
 "as the principal parish organization for furthering economic development of the parish and for promoting and assisting the growth and development of the parish industrial and business concerns."
Pursuant to LSA-R.S. 34:2029(A), the purposes for which JEDCO "is created and authorized to act [under Chapter 20 of Title 34] are found and declared to be public purposes and functions of the state ofLouisiana, which are delegated to the district." (Emphasis supplied). In accordance with LSA-R.S. 34:2029(B), JEDCO is specifically authorized:
 "to issue revenue bonds for which the district is created or is authorized to act under any provision of this Chapter, including industrial and commercial development revenue bonds. Said bonds shall be issued in the manner as provided for in R.S. 39:991 through 1001 and R.S. 39:1011 through 1024." (Emphasis supplied).
LSA-R.S. 39:991, et seq., authorizes the issuance of revenue bonds by certain public entities to encourage the location or addition to industrial enterprises located therein or adjoining thereto. In pertinent part, LSA-R.S. 39:996 thereof provides as follows:
 "Prior to the issuance of any bonds under this Part, the municipality shall lease, sublease or agree to sell the project to a lessee, sublessee or purchaser under an agreement conditioned upon completion of the project and providing for payment to the municipality of such rentals or installment payments as will be sufficient (a) to pay the principal of and interest on the bonds issued to finance the project, (b) build up and maintain any reserve deemed by the governing body to be advisable in connection therewith, and (c) unless the contract obligates the lessee, sublessee or purchaser to pay for the maintenance and insurance of the project, to pay the cost of maintaining the project in good repair and keeping it properly insured. Such lease, sublease or agreement of sale shall be made upon such other terms and conditions and for the time which may be determined by the municipality and may contain provisions authorizing the purchase of the entire leased property . . . If title to the project is in the municipality, the municipal corporation may specifically require as a condition under the lease agreement, that the lessee of each of the projects of said municipal authority shall pay annually to the appropriate taxing authority, through the normal collecting agency, a sum in lieu of ad valorem taxes to compensate such authorities for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to such authorities had it been the owner of such project during the period for which such payment is made."
Based upon the foregoing, it is the opinion of this office that property owned by JEDCO, a body politic and political subdivision of the state, is "vested in the public", in accordance with the first requirement of La. Const. Art. VII, Sec. 21(A). It is our further opinion that property acquired by JEDCO in accordance with its statutory authority and in furtherance of its public purposes, is "used for a public purpose" in accordance with the second requirement of La. Const. Art. VII, Sec. 21(A).
As such, it is our opinion that if (i) JEDCO issues revenue bonds to finance the Project under the authority of LSA-R.S. 39:991, et seq., in furtherance of a public purpose for which JEDCO was created and is authorized to act under Chapter 20 of Title 34, (ii) prior to the issuance of the bonds JEDCO acquires title to the property comprising the Project and (iii) JEDCO enters into a lease of the property in compliance with the provisions and requirements of LSA-R.S. 39:996, the property comprising the Project will be exempt from ad valorem taxes during the term of the bond issue while the property is owned by JEDCO.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 ____________________________________ BY: JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/dam
Date Released: May 30, 2002