No. 63,227

TRI-COUNTY PUBLIC AIRPORT AUTHORITY, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF MORRIS COUNTY, KANSAS, *Appellee*.

(777 P.2d 843)

Opinion filed July 14, 1989.

*Charles R. Rayl*, of Rayl and Fowler, Chartered, of Cottonwood Falls, argued the cause and was on the brief for appellant.

*Michael F. Powers*, county attorney, argued the cause, and *William A. Kassebaum*, assistant county attorney, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: The Tri-County Public Airport Authority (Tri-County) appeals from a decision of the Shawnee County District Court, which affirmed a Board of Tax Appeals (BOTA) order. The BOTA concluded that only part of the real property owned by Tri-County was exempt from ad valorem taxes pursuant to the Surplus Property and Public Airport Authority Act, K.S.A. 27-315

*et seq.*, and K.S.A. 1988 Supp. 79-201a *Second.* It concluded that land owned by Tri-County but leased to various other private entities for production of revenue was not exempt. The case was transferred to this court from the Court of Appeals pursuant to K.S.A. 20-3018(c). We affirm.

The facts are not in dispute. On September 24, 1948, the City of Herington, Kansas, acquired 1,720.5 acres of real estate, formerly known as Delavan Army Air Base, from the United States government. The City of Herington paid ad valorem taxes on the property while it was under city ownership. The city operated the property as an airport and entered into several leases with private entities for the use of various parcels of property on the old air base for a variety of purposes.

On June 27, 1978, the City of Herington, pursuant to K.S.A. 27-319, enacted an ordinance creating the Tri-County Public Airport Authority. On December 4, 1979, the city conveyed the property making up the old air base to Tri-County pursuant to K.S.A. 27-321. On July 18, 1980, Tri-County filed an action in mandamus with the District Court of Morris County, seeking a determination that the property was tax-exempt. The district court held that the entire parcel was exempt. On appeal, however, this court reversed and directed dismissal of the case, holding that the Morris County District Court lacked jurisdiction because Tri-County had not exhausted its administrative remedies. See *Tri-County Public Airport Authority v. Board of Morris County Comm'rs*, 233 Kan. 960, 967, 666 P.2d 698 (1983).

Tri-County soon thereafter filed an application for relief with the BOTA, seeking an abatement of taxes beginning in 1978 and requesting an exemption pursuant to K.S.A. 1988 Supp. 79-201a. In its application, Tri-County indicated that the primary function of the property is as a municipal airport, and listed several businesses operating in the "Industrial Park." The county appraiser contested the application, contending that not all of the subject property should be exempt. The BOTA held a hearing on the application on April 15, 1985.

The parties stipulated to certain facts, including the following:

"5. The Tri County Public Airport Authority currently leases to third parties portions or all of the tracts described in paragraph 3 above. Several non-aviation businesses lease property including farm lands, pasture lands, manufacturing and assembly plants, feed lot and processing plants from the Tri County Public Airport Authority, situated on the real estate described in paragraph 3 above. All

of the revenues derived from the lease of said property described above are exclusively used by The Tri County Public Airport Authority for its operations as a political subdivision for the furtherance of the public good achieved by the maintenance and operation of a public airport. The airport is a public airport within the definition of K.S.A. 27-329(f) and includes property needed to develop sources of revenue from non-aviation businesses at such airport."

At the hearing, Morris County did not contest the request for exemption as to the property used for airport purposes, but did question whether the exemption should include the leased acreage. Evidence presented at the hearing indicated that Tri-County leases approximately 1,336 acres to private parties, or about 78% of its total acreage. The buildings, facilities, cattle, and other personal property belonging to the lessees are on the tax rolls as personal property. Tri-County does not seek a tax exemption for the buildings and personal property owned by the lessees which are located on the site. The only matter in dispute is whether the land owned by Tri-County is exempt from ad valorem tax in its entirety.

The evidence presented at the hearing established that all revenue generated by leasing parts of the property to nonaviation-related businesses was used to finance airport operations and debt service on airport revenue bonds. Although K.S.A. 27-322 authorizes an airport authority to levy taxes on city property, the financial records submitted at the hearing showed that Tri-County financed its operations solely from non-tax revenue.

The BOTA issued a preliminary order on July 9, 1986. It recognized that Tri-County was statutorily authorized by K.S.A. 27-320(c) to own and operate property for the production of revenue from nonaviation businesses. However, the BOTA determined that the applicable statutory tax exemption, 79-201a *Second,* does not extend to property leased to and used by private entities for purposes unrelated to a function or purpose of government.

For the purpose of implementing its decision, the BOTA directed Tri-County to provide a legal description encompassing that part of its property including "runways, taxi-ways, terminals, and a sufficient amount of surrounding land which is directly necessary to the operation of the airport." Those parts of the property leased to private entities were determined to be non-exempt "except to the extent they are directly necessary to the operation of the airport." On October 27, 1986, Tri-County and

Morris County submitted a list of acreage, totalling 349 acres, in response to the BOTA's preliminary order.

The BOTA issued its final order on December 2, 1987, and based upon the information submitted by the parties it held 349 acres of the Tri-County property to be exempt. Following the denial of a motion for rehearing, Tri-County filed a timely petition for judicial review in Shawnee County District Court. The district court affirmed the BOTA order and Tri-County has appealed. Tri-County raises two basic issues in this appeal:

(1) Whether all of the property of Tri-County qualifies for an ad valorem tax exemption under K.S.A. 1988 Supp. 79-201a *Second* as a matter of law based upon the undisputed evidence; and

(2) whether the Tri-County property should be exempt as a unit.

As provided in K.S.A. 1988 Supp. 74-2426(c), an appeal from a decision of the BOTA is generally subject to the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* Tri-County contends, *inter alia,* that the BOTA erroneously interpreted or applied the law, K.S.A. 77-621(c)(4), and that the BOTA otherwise acted unreasonably, arbitrarily, and capriciously, K.S.A. 77-621(c)(8).

Before turning to the specific issues asserted by Tri-County, certain basic rules and legal principles warrant review. Whether particular property is exempt from ad valorem taxation is a question of law if the facts are agreed upon. *T-Bone Feeders, Inc. v. Martin,* 236 Kan. 641, 645, 693 P.2d 1187 (1985); *State, ex rel., v. Davis,* 144 Kan. 708, 709-10, 62 P.2d 893 (1936). Taxation is the rule, and exemption from taxation the exception under the Kansas Constitution and statutes. *T-Bone Feeders, Inc. v. Martin,* 236 Kan. at 645; *City of Arkansas City v. Board of County Commissioners,* 197 Kan. 728, Syl. ¶ 1, 420 P.2d 1016 (1966); *Sunday School Board of the Southern Baptist Convention v. McCue,* 179 Kan. 1, 7, 293 P.2d 234 (1956); *Defenders of the Christian Faith, Inc. v. Horn,* 174 Kan. 40, 44, 254 P.2d 830 (1953); *Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 649, 296 Pac. 734 (1931). Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption, and all doubts are to be resolved against exemption. *In re Application of Int'l Bhd. of*

*Boilermakers*, 242 Kan. 302, 305, 747 P.2d 781 (1987); *Lutheran Home, Inc. v. Board of County Commissioners*, 211 Kan. 270, 275, 505 P.2d 1118 (1973); *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, 851, 473 P.2d 1 (1970), and cases cited therein; *Kenneth Godfrey Aviation, Inc. v. Smith*, 12 Kan. App. 2d 434, 436, 746 P.2d 1068 (1987). Where the language of a statute, in particular, is relied upon as creating an exemption from taxation, it must be strictly construed against the party claiming the exemption, and he must bring himself clearly within the exemption. *Meadowlark Hill, Inc. v. Kearns*, 211 Kan. 35, 41, 505 P.2d 1127 (1973); *First Nat'l Bank v. Lovitt*, 158 Kan. 535, 540, 148 P.2d 738 (1944). Strict construction, however, does not warrant unreasonable construction. *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, Syl. ¶ 2.

The Kansas Constitution, Art. 11, § 1, provides,

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes . . . shall be exempted from property taxation."

Property expressly exempt from taxation by the Kansas Constitution cannot be taxed. *State, ex rel., v. Board of Regents*, 167 Kan. 587, 595, 207 P.2d 373 (1949). Tri-County, however, does not claim tax exemption under the constitutional provision.

This court has held that the State's constitutional provision exempting certain property from property taxation does not preclude the legislature from providing for additional exemptions. See *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, Syl. ¶ 5; *City of Harper v. Fink*, 148 Kan. 278, 280, 80 P.2d 1080 (1938); *Wheeler v. Weightman*, 96 Kan. 50, 59-61, 149 Pac. 977 (1915). However, statutory exemptions must have a proper public purpose and must promote the general welfare. *In Re Tax Protest of Strayer*, 239 Kan. 136, 141, 716 P.2d 588 (1986); *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, Syl. ¶ 3, 701 P.2d 1314 (1985); *Von Ruden v. Miller*, 231 Kan. 1, 14, 642 P.2d 91 (1982); *State ex rel. Tomasic v. Kansas City, Kansas Port Authority*, 230 Kan. 404, 411-12, 636 P.2d 760 (1981); *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 42, 542 P.2d 278 (1975); *State, ex rel., v. Board of Regents*, 167 Kan. at 596; *Alpha Tau Omega v. Douglas County Comm'rs*, 136 Kan. 675, 684-86, 18 P.2d 573 (1933). Otherwise, a statutory exemption could be subject to a constitutional challenge as a

violation of the Equal Protection Clause of the United States Constitution, or a violation of the clause in Article 11, Section 1 of the Kansas Constitution requiring a uniform and equal rate of taxation. See *Von Ruden v. Miller*, 231 Kan. at 14; *Alpha Tau Omega v. Douglas County Comm'rs*, 136 Kan. at 685-86. Within the scope of legislative power, however, the legislature itself is the judge of what exemptions are in the public interest and will be conducive to the public welfare. *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. at 579; *State ex rel. Tomasic v. Kansas City, Kansas Port Authority*, 230 Kan. at 412; *State, ex rel., v. Board of Regents*, 167 Kan. at 596; *Gunkle v. Killingsworth*, 118 Kan. 154, 157, 233 Pac. 803 (1925). The granting of a tax exemption is a function of the legislature and may not be done by the Director of Revenue, the Board of Tax Appeals, or the Supreme Court. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 459, 691 P.2d 1303 (1984); *Republic Natural Gas Co. v. Axe*, 197 Kan. 91, 96, 415 P.2d 406 (1966).

Tri-County was created pursuant to statutory authority embodied in the Surplus Property and Public Airport Authority Act, codified at K.S.A. 27-315 *et seq*. The Act applies to any city, like Herington, which has acquired an air base declared surplus by the United States government. K.S.A. 27-317. The purpose of the Act is set forth in K.S.A. 27-316 as follows:

"It is hereby declared to be the policy of the state that to promote the public interest, economy, safety, education and general welfare of the cities to which the provisions of this act may be applicable and of the residents and property owners therein that the people be empowered to acquire, own, maintain, operate, improve and dispose of surplus real or personal properties of the United States, the state of Kansas, any political subdivision thereof or any municipality therein, within or without the cities to which the provisions of this act may be applicable, including, but not limited to, property which may be essential, suitable or desirable for the development, improvement, operation or maintenance of a public airport. Because of the unique problems which exist relative thereto, the creation of an authority separate and distinct from such cities and the counties in which such cities are located is necessary."

The term "public airport" is defined in K.S.A. 27-318(d):

" 'Public airport' means a public airport as defined in the federal airport act of 1946, as amended, and shall include such property which in the determination of the administrator of the federal aviation agency is essential, suitable or desirable for the development, improvement, operation or maintenance of such public airport or reasonably necessary to fulfill the immediate and foreseeable future requirements of such public airport for the development, improvement, opera-

tion or maintenance of such public airport, *including property needed to develop sources of revenue from nonaviation businesses at such public airport.*" (Emphasis added.)

The first issue raised by Tri-County is whether its property qualifies for exemption from ad valorem tax under K.S.A. 1988 Supp. 79-201a *Second.* The language pertinent to this appeal reads as follows:

"The following described property, to the extent herein specified, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

*Second.* All property used exclusively by the state or any municipality or political subdivision of the state. All property owned or operated by the state or any municipality or political subdivision of the state which is used or is to be used for any governmental or proprietary function and for which bonds may be issued or taxes levied to finance the same, shall be considered to be 'used exclusively' by the state, municipality or political subdivision for the purposes of this act." K.S.A. 1988 Supp. 79-201a.

The appellant essentially argues that K.S.A. 1988 Supp. 79-201a *Second* establishes a three-prong test for determining whether property is entitled to a statutory exemption from ad valorem taxes: (1) The property must be owned or operated by the state or any municipality or political subdivision of the state; (2) the property is used or is to be used for any governmental or proprietary function; and (3) the function is one for which bonds may be issued or taxes levied to finance the same. Tri-County argues that its property meets the three-prong test and, because airport operations and maintenance are financed by revenues derived from leasing its land for nonaviation purposes, allegedly a proprietary use, the statutory exemption serves a public purpose and promotes the general welfare.

In response, Morris County contends that the lease of airport property for nonaviation commercial purposes does not constitute a "governmental or proprietary function" for purposes of K.S.A. 1988 Supp. 79-201a *Second,* and, therefore, the Tri-County property in question does not come within the requirement of being "used exclusively" for purposes of the statutory exemption.

Tri-County clearly has the power and authority to own property for investment and/or revenue producing purposes, and such property by definition may be included as a part of a "public airport" notwithstanding the fact the property bears no

direct relationship to the actual operation of the airport facility. However, the fact that the statutes authorize ownership of such property does not necessarily mean that the property is being "used exclusively" for the required purposes under 79-201a *Second* so as to qualify for ad valorem tax exemption. The issue here is whether the ownership and use of property solely for the production of revenue is a "governmental or proprietary function" within the meaning of the statute.

There is no contention that Tri-County performs a governmental function when it leases its property to private entities for commercial purposes totally unrelated to any airport activity. However, Tri-County does contend that leasing its property for nonaviation commercial purposes, to generate revenue for airport operations, constitutes a proprietary function with a public purpose. The County argues, however, that no public function of government whatsoever is being carried out on the land leased to private entities, so the property does not meet the statutory definition of "used exclusively." The County argues that only a use that is directly necessary to the operation of the airport itself constitutes a governmental or proprietary use imbued with a public purpose for purposes of 79-201a *Second*.

This precise question was recently addressed by the Kansas Court of Appeals in *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, 761 P.2d 1261 (1988). The Salina Airport Authority (SAA), like Tri-County, was established pursuant to the Surplus Property and Public Airport Authority Act. Schilling Air Force Base was closed by the federal government, acquired by the City of Salina, converted into a municipally owned airport and industrial complex, and transferred to SAA. In 1984, SAA acquired a noncontiguous tract of real estate together with two buildings for the purposes of attracting industry to Salina and generating revenue for airport operations. Lease agreements were negotiated with private corporations engaged in nongovernmental commercial ventures for use of the property. Rental income was used to finance airport operations and maintenance.

The Court of Appeals concluded that the statute did not authorize a tax exemption for the property. It reasoned as follows:

"For purposes of analysis, we assume without actually deciding that the

Authority's lease of the properties in question was done in furtherance of discharging a proprietary function; that is, to generate income for operation and maintenance of the airport. Nonetheless, the leased properties were not in any way used for a proprietary function *of government.* To the contrary, the properties were leased to strictly private corporations intent only on profits for their stockholders. *The mere fact that the Authority receives rental income does not constitute 'use' within the meaning of K.S.A. 1987 Supp. 79-201a Second.* Such a construction would be inconsistent with the clear and unequivocal language of the statute. There is no public function of government being carried out upon the leased properties. To decide otherwise would compel a conclusion that the legislature intended all property owned by the State, its subdivisions, and municipalities leased to private corporations for nongovernmental purposes to be exempt from taxation. This would not only be inconsistent with the statute; it would be unconstitutional." 13 Kan. App. 2d at 84. (Emphasis added.)

Tri-County attempts to distinguish *Salina Airport Authority* on its facts. First, the SAA property in question was not part of the original air base; it was separately acquired for the purpose of generating revenue for the airport. In the instant case, all of the property in dispute was part of the original air base. Second, the SAA claimed a tax exemption not only for the land but also for two buildings located on the property. In contrast, Tri-County does not seek a tax exemption for the buildings owned by its lessees. Neither factual distinction is legally significant. Tri-County could not succeed in claiming a tax exemption for the buildings located on the subject property because it neither owns nor operates those facilities, as required by the first prong of the test set forth in 79-201a *Second.* Furthermore, whether the property in question was originally part of the surplus federal air base, or was acquired later for revenue-generating purposes, is irrelevant under the pertinent statutes.

The result reached by the Court of Appeals in *Salina Airport Authority* is consistent with the majority rule among other jurisdictions where, as here, ownership of property by an exempt body is not the sole test of exemption. See Annot., Availability of Tax Exemption to Property Held on Lease From Exempt Owner, 54 A.L.R.3d 402, § 17, and cases cited in the current supplement. This result is also consistent with our longstanding case law requiring strict construction of statutory tax exemptions. We agree with the Court of Appeals' rationale in *Salina Airport Authority.* Tri-County argues that there are only two kinds of functions, governmental and proprietary, and that the statute encompasses both no matter how the property is actually used.

Such a construction is far too broad. Exclusive use as defined by the statute requires actual use of the property for a public purpose. The leasing of portions of the Tri-County property solely for the purpose of generating revenue, while authorized by the Surplus Property and Public Airport Authority Act, does not constitute exclusive use for a "governmental or proprietary function" of the airport authority even though the particular use of the leased property may be proprietary in nature. The use contemplated by the statute and our prior cases is one directly connected with an appropriate function of government. As stated by the BOTA, "The use must be in the nature of a public use even though proprietary in nature." Ownership of property solely for the purpose of producing revenue which may ultimately be used to finance a governmental function, in this case the airport facility, is not exclusive use as defined by K.S.A. 1988 Supp. 79-201a *Second.*

In its appellate brief, Tri-County makes a host of specific arguments challenging the particular language used and the reasoning underlying the BOTA order. However, K.S.A. 77-621(d) requires a court reviewing a BOTA order to take due account of the rule of harmless error. The BOTA did not err in concluding that the land leased by Tri-County to commercial entities for nonaviation purposes was not tax-exempt under K.S.A. 1988 Supp. 79-201a *Second.*

It should be noted that the 1989 session of the legislature, presumably in response to *Salina Airport Authority,* amended K.S.A. 27-319 to include the following language:

"(b) The Salina airport authority shall be exempt from the payment of ad valorem taxes levied by any other political or taxing subdivision of the state on property owned by it on January 1, 1989, and which is located within the corporate limits of the city creating the authority." S.B. 165.

While we will not speculate on the validity of this amendment, we do note that, if the legislature had intended for this recent amendment to apply to Tri-County or other airport authorities established under the Act, it could easily have amended the statute to do so.

The second issue raised by Tri-County is whether or not the airport property should be exempt from ad valorem tax as a single unit. Tri-County contends that there is no basis for dividing its property for separate tax treatment. The language of K.S.A. 1988

Supp. 79-201a itself belies this argument. It provides, "The following described property, *to the extent herein specified*, shall be exempt from all property or ad valorem taxes." (Emphasis added.) The statute clearly envisions that part of the property of a municipality or political subdivision may not be entitled to a tax exemption if it does not come within the specific language of an exemption. The cases upon which Tri-County relies in arguing that the airport property should be exempt as a whole were decided under different or predecessor statutes and are not controlling. Nothing in the cases relied upon by Tri-County precludes the BOTA from ordering that part of the real property owned by Tri-County is not entitled to tax exemption under K.S.A. 1988 Supp. 79-201a *Second* when it is not being "used exclusively" by Tri-County as that term is defined in the statute.

We wish to emphasize that our decision is based upon the factual situation of this case in which the property found not to be exempt from taxation was being leased to private enterprise for businesses which have no direct or necessary relationship to the operation of a public airport. We make no determination here as to the taxability of airport property leased to airport-related businesses necessary or advisable in the proper operation of an airport facility.

The judgment is affirmed.