Dear Ms. Odom: Providence Port Commission.
You have requested an opinion of the Attorney General regarding the ad valorem tax exempt status of several businesses operating on property owned by the Lake Providence Port Commission (Commission). The four businesses in question are:
 (1) Cargill, Incorporated (Cargill), is in the business of purchasing and selling cotton seed.
 (2) Cobra Resources (Cobra), is in the business of transporting coal.
 (3) Bunge Corporation (Bunge), owns a grain elevator.
 (4) Terral River Service (Terral), sells liquid and dry fertilizer, gravel and asphalt mix, and other products.
Initially, it should be noted that the authority to determine whether a particular taxpayer may be exempt from the payment of ad valorem taxes is a factual determination exclusively reserved by Article VII, Section 18(E), of the 1974 Constitution to the Louisiana Tax Commission (LTC). Attorney General Opinion Nos. 92-660, 89-599, and 76-114. While the Attorney General does not have the authority to grant tax exemptions, we would like to assist you and the Commission as to the applicable law which may be used in making individual decisions.
The jurisprudence of this state has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body, and against the taxpayer desiring the exemption. Any plausible doubt is fatal. Thus, an exemption, being an exceptional privilege, must be clearly, unequivocally, and affirmatively established.Zapata Haynie Corp. v. Larpenter, 583 So.2d 867 (La.App. 1st Cir. 1991), Writ Denied.
Article VII, Section 21 provides, in pertinent part, the following:
 "Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
 (A) Public lands; other public property used for public purposes.
(C) * * *
 (11) agricultural products while owned by the producer, agricultural machinery and other implements used exclusively for agricultural purposes, animals on the farm, and property belonging to an agricultural fair association;
 (D) (1) Raw materials, goods, commodities, and articles imported into this state from outside the states of the United States:
 (a) so long as the imports remain on the public property of the port authority or docks of the common carrier where they first entered this state;
 (b) so long as the imports (other than minerals and ores of the same kind as any mined or produced in this state and manufactured articles) are held in this state in the original form in bales, sacks, barrels, boxes, cartons, containers, or other original packages, and raw materials held in bulk as all or a part of the new material inventory of manufacturers or processors, solely for manufacturing or processing; or
 (c) so long as the imports are held by an importer in any public or private storage in the original form in bales, sacks, barrels, boxes, cartons, containers, or other original packages and agricultural products in bulk. This exemption shall not apply to these imports when held by a retail merchant as part of his stock-in-trade for sale at retail.
 (2) Raw materials, goods, commodities, and other articles being held on the public property of a port authority, on docks of any common carrier, or in a warehouse, grain elevator, dock, wharf, or public storage facility in this state for export to a point outside the states of the United States.
 (3) Goods, commodities, and personal property in public or private storage while in transit through this state which are moving in interstate commerce through or over the territory of the state or which are in public or private storage within Louisiana, having been shipped from outside Louisiana for storage in transit to a final destination outside Louisiana, whether such destination was specified when transportation began or afterward."
Section 21 also affords tax exemptions to new manufacturing establishments, and additions to existing ones, and to structures and inventory located within economic development and/or enterprise zones. We have been advised by Mr. John Jernigan, Office of Commerce and Industry, that there are currently no contracts in existence affording these exemptions to the businesses in question.
Section 21 (A) affords ad valorem tax exemption to public lands and other public property used for public purposes. This general exemption includes all property owned by the state and its political subdivisions. Slay v. La. Energy Power Authority,473 So.2d 51 (La. 1985). The Commission constitutes a political subdivision under Article VI, Sections 43 44 of the 1974 Constitution. Attorney General Opinion Nos. 91-666 and 77-36. Thus, the property owned by the Commission and leased to the four businesses constitutes public property.
The second requirement for ad valorem tax exemption is that the public property be used for a public purpose. Slay v. La. Energy Power Authority, cited supra. Thus, property owned by the Commission and leased to a private entity strictly for private purposes enjoys no exemption and is subject to assessment. As observed by the court in Schulingkamp v. Heaton, 455 So.2d 1181
(La.App. 4th Cir. 1984), Writ Denied:
 "Allowing improvements on tax exempt property to be themselves tax exempt when used for a private purpose would lead to a very inequitable result in this City's tax scheme. To tax private lessees of private lands and not to tax private lessees of public lands would be unjust and inequitable. We do not believe the tax exemption scheme for public lands was intended to allow some more fortunate individuals to escape taxation by the fact that they lease and reside on public lands."
Conversely, the fact that public property is leased to a private entity does not preclude it from being for a public purpose so as to be exempt. Attorney General Opinion Nos. 92-408 and 89-599.
In Charleston County Aviation v. Wasson, 289 S.E.2d 416 (S.C. 1982) the Constitution provided that exemption from taxation would extend to "all property of the state, counties, municipalities, school districts and other political subdivisions, if the property is used exclusively for a public purpose." The question therein was whether property of the Charleston County Aviation Authority was exempt. The Court observed that property used by a private business entity does not preclude the use from being for a public purpose. It was concluded that air transportation, land transportation, a place to park, and available food all are customarily performed by private business, but are recognized as a necessary part of an airport and incidental to the public use. However, two of the lessees that provided a terminal, fuel and repair facilities, and other incidental services and charters were found to be used for a non-exclusive public purpose in that "the primary beneficiaries of the use of this property are the two private companies." The Court found, as a general rule, a public purpose has for its objective the promotion of public health, safety, morals, general welfare, security, prosperity and contentment of all inhabitants or residents, or at least a substantial part thereof.
In State v. City of Columbia, 115 S.C. 108, 104 S.E. 337 (1920), the Court held the leasing of a theater in the City Hall to a private person still qualified as a public purpose where the revenue was incidental, for it was an expedient way of giving effect to the public purpose for which the theater was often used. Therefore, when the use is for a public purpose, an incidental private use or benefit will not negate or alter that public purpose and use of the property.
Similar reasoning is seen in Tri-County Public Airport Authorityv. Board of County Commissioners, 245 Kan. 301, 777 P.2d 843, (1989) and Salina Airport Authority v. Board of Tax Appeal,14 Kan. App. 2d 80, 761 P.2d 1261, (1988), where the Court sought to determine if there was governmental use, stating the mere fact the authority received rental income does not constitute "use" within the statute when there was no public function of government being carried out upon the lease property.
Likewise, in Town of Harrison v. Co. of Westchester,246 N.Y.S.2d 593, 196 N.E.2d 240, (1963), the Court held while revenues from hangers leased for private use help to defray the expense of operating the public airport, they were not sufficient to render the use of the property public since the property itself must be devoted to a public use. See also, BDT Inc. v. Moore,260 Ark 581, 543 S.W.2d 220 (1976).
In order to assist in a determination of whether property qualifies for exemption, the actual activities of the lessee, the purpose of the business' charter, and use of the particular portion of the property under consideration should be examined as to how these factors relate to a public purpose.
It must be concluded that property cannot be exempt when it serves no governmental function or is not reasonably incidental to a governmental function. The fact that the property will produce revenues which go toward financing governmental functions will not be sufficient to bring property within the purview of the exemption.
While the businesses in question do not appear to meet the criteria necessary to "serve a governmental function", such a determination rests upon the shoulders of you, the assessor, and the LTC.
Section 21 (C)(1) affords ad valorem tax exemptions to agricultural products while owned by the producer, and agricultural machinery and other implements used exclusively for agricultural purposes. It follows that if the agricultural product has passed out of ownership of the producer, it is no longer exempt from taxation.
In making your determination of exemptions as to agricultural products, the obvious question that arises is what constitutes an "agricultural product". It is well established by numerous authorities that the term, for tax exemption purposes, means a product in its natural state, unchanged by the process of manufacturing. Opinion of the Attorney General, 1934-36, pg. 1168.
As stated earlier, Cargill purchases and sells cotton seed. Assuming cotton seed is an agricultural product, Cargill must be the producer in order for the seed to enjoy exemption from property taxes under Section 21 (C)(11).
Bunge owns a grain elevator. We have been unable to locate any cases addressing the issue of whether a grain elevator constitutes an agricultural implement. However, we have been advised by the LTC that it does not consider grain elevators to be tax exempt.
Terral sells liquid and dry fertilizers which would not appear to be an agricultural product in its natural state, unchanged by the process of manufacturing
Finally, Section 21(D) affords tax exempt status to raw materials, goods, commodities, and articles which are (1) imported into this state from outside the United States, but only if the requirements set forth in Section 21(D)(1)(a)-(c) are complied with, (2) being held for export to a point outside the United States and/or (3) being held in public or private storage while in transit to a final destination outside the State of Louisiana. Again, it is your responsibility, as assessor, to determine which, if any, of these factual situations exist so as to afford exemption from ad valorem taxation.
We hope this information is sufficient and of benefit to you. If we can be of further assistance, please feel free to call upon us at any time.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: __________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb 0108R
State of Louisiana
DEPARTMENT OF JUSTICE CIVIL DIVISION P.O. BOX 94005 BATON ROUGE TEL: (504) 342-7013 RICHARD P. IEYOUB 70804-9005 FAX: (504) 342-2090 ATTORNEY GENERAL