No. 70,358

IN THE MATTER OF THE APPLICATION OF THE CITY OF WICHITA, KANSAS, FOR EXEMPTION FROM AD VALOREM TAXATION IN SEDGWICK COUNTY, KANSAS.

(877 P.2d 437)

Opinion filed July 15, 1994.

*Joe Allen Lang*, first assistant city attorney, argued the cause, and *Gary E. Rebenstorf*, city attorney, was with him on the briefs for appellant City of Wichita.

*Patricia J. Parker*, assistant county counselor, argued the cause and was on the brief for appellee Board of Sedgwick County Commissioners.

The opinion of the court was delivered by

DAVIS, J.: The question raised by this appeal is whether real estate owned by the City of Wichita (City), acquired through civil forfeiture by law enforcement for drug law violations, is exempt from ad valorem taxation during the period of time the City holds the property prior to sale under law. The Board of Tax Appeals (BOTA) denied the exemption, and the district court affirmed. For the reasons set forth below, we affirm the district court.

The facts are not in dispute. The City acquired a one-story single family dwelling with garage by forfeiture for violations of Kansas drug laws pursuant to K.S.A. 65-4135. The City owned the property from May 27, 1988, to September 13, 1989, for which period it requested an exemption from ad valorem taxation.

The property remained vacant during the time the City held it. City narcotics officers maintained and repaired the property in anticipation of its sale. On September 13, 1989, the property was sold to a private party; pursuant to K.S.A. 65-4173, the proceeds went to fund police narcotics enforcement activities.

### The BOTA Decision

BOTA considered the pertinent provisions of K.S.A. 79-201a, which provides in part:

"The following described property, to the extent herein specified, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Second.* All property used exclusively by the state or any municipality or political subdivision of the state. All property owned . . . by . . . any municipality . . . which is used or is to be used for any governmental or proprietary function and for which bonds may be issued or taxes levied to finance the same, shall be considered to be 'used exclusively' by the . . . municipality . . . for the purpose of this section."

Acknowledging that the property was acquired by the City under Kansas drug forfeiture laws, BOTA determined that under K.S.A. 79-201a,

"[t]he property must be being used or is to be used for a governmental or proprietary function. The Board finds that the ownership and holding of the property for future disposition is not a governmental function. Therefore, the Board concludes that the subject property fails to meet the statutory requirements for exemption prescribed by K.S.A. 79-201a *Second* and the applicant's request should be denied."

### The District Court Decision

Relying on *Tri-County Public Airport Auth. v. Board of Morris County Comm'rs,* 245 Kan. 301, 777 P.2d 843 (1989), the district court concluded that "[e]xclusive use as defined by the statute requires actual use of the property for a public purpose"; that "[o]wnership of property solely for the purpose of producing revenue which may ultimately be used to finance a governmental function . . . is not exclusive use as defined by K.S.A. 1988 Supp. 79-201a *Second.*"

The court rejected the City's argument that it was "using" the property to deter illegal drug activity even though the property was vacant and the City was holding it for sale. The court reasoned that exclusive use requires actual use and mere acquisition of property for the purpose of deterring crime is not actual use. The district court concluded that "[t]he statute is to be construed strictly against granting exemption. The BOTA Order denying exemption was, therefore, a reasonable interpretation of the law and was supported by the evidence before it."

### Discussion, Analysis, and Holding
Standard of Review

K.S.A. 77-621(c) of the Act for Judicial Review and Civil Enforcement of Agency Actions sets forth the circumstances under which a district court may grant relief from an agency decision:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

The City contends it is entitled to relief under K.S.A. 77-621(c)(4), (7), and (8); BOTA erroneously interpreted or applied the law; the BOTA decision was not supported by the evidence; and the BOTA decision was unreasonable, arbitrary, and capricious.

We have described the test to determine when agency conduct is arbitrary and capricious:

"[T]he arbitrary and capricious test relates to whether that particular action should have been taken or is justified, such as the reasonableness of the [agency's] exercise of discretion in reaching the determination, or whether the agency's action was without foundation in fact." *Kansas Racing Management, Inc. v. Kansas Racing Comm'n,* 244 Kan. 343, 365, 770 P.2d 423 (1989).

We also have held that an agency's action may be arbitrary and capricious when it is "not supported by substantial evidence," and defined substantial evidence as "evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can be reasonably resolved." *Kansas Racing Management, Inc.,* 244 Kan. at 365. The City's burden is significant, however, because the agency's decision is presumed valid:

"This court may not try the case de novo or substitute its judgment for that of the administrative agency. [Citation omitted.] A rebuttable presumption of validity attaches to all actions of an administrative agency and the burden of

proving arbitrary and capricious conduct lies with the party challenging the agency's actions." *Kansas Racing Management, Inc.*, 244 Kan. at 365.

In *Tri-County*, 245 Kan. at 304-05, we summarized some basic principles governing review of BOTA decisions concerning the availability of tax exemptions. Those principles merit repeating here:

"Whether particular property is exempt from ad valorem taxation is a question of law if the facts are agreed upon. [Citations omitted.] Taxation is the rule, and exemption from taxation the exception under the Kansas Constitution and statutes. [Citations omitted.] Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption, and all doubts are to be resolved against exemption. [Citations omitted.] Where the language of a statute, in particular, is relied upon as creating an exemption from taxation, it must be strictly construed against the party claiming the exemption, and he must bring himself clearly within the exemption. [Citations omitted.] Strict construction, however, does not warrant unreasonable construction. [Citation omitted.]"

"[I]t is the function of a court to interpret a statute to give it the effect intended by the legislature." *National Collegiate Realty Corp. v. Board of Johnson County Comm'rs*, 236 Kan. 394, 404, 690 P.2d 1366 (1984) (quoting *Sterling Drilling Co. v. Kansas Dept. of Revenue*, 9 Kan. App. 2d 108, 673 P.2d 456 [1983]). Although courts will give consideration and weight to an administrative agency's interpretation of a statute, they will not adhere to that interpretation when the statute is clear and the agency's ruling is incorrect. The final construction of a statute rests within the courts. Statutory construction is clearly within the province of the trial court and the appellate courts to determine. See 236 Kan. at 404.

The Forfeiture Statute

The property at issue was seized by the City pursuant to K.S.A. 65-4135, which provides in pertinent part:

"(a) The following are subject to forfeiture:

. . . .

(7) all real property, including any building or structure thereon, which is used or intended for use in violation of this act, if such violation constitutes a felony . . . ." (The statute then includes some exceptions, which are not at issue here.)

If the forfeited property is not harmful to the public and the law does not require that it be destroyed,

"the law enforcement agency to which the property is forfeited shall:
  (1) Sell the property in accordance with subsection (d); or
  (2) if the property is not subject to a lien which has been preserved by the court, retain the property for official use." K.S.A. 65-4172(b).

K.S.A. 65-4172(d) essentially requires that the property be sold, after proper notice, to the highest bidder "for cash without appraisal."

The forfeiture statutes have been held to be penal in nature, even though the forfeiture proceedings are civil. *City of Lenexa v. A Maroon 1978 Chevrolet*, 15 Kan. App. 2d 333, 335, 807 P.2d 694 (1991). Kansas forfeiture law is similar to the federal forfeiture law. See *City of Lenexa*, 15 Kan. App. 2d at 335. We are mindful that the United States Supreme Court has held that the federal forfeiture law is penal in nature and subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Austin v. United States*, 509 U.S. ___, 125 L. Ed. 2d 488, 503-06, 113 S. Ct. 2801 (1993). We acknowledge that one purpose of the forfeiture statute is to deter future unlawful activity. See *Austin*, 509 U.S. at ___, 125 L. Ed. 2d at 504.

We also recognize that in this state all of the revenue generated from the sale of forfeited property is returned to law enforcement to cover costs of this and future enforcement activities. The proceeds from the sale of the forfeited property must go to pay the costs of storage, maintenance, and security of the property. The balance is payable to a special law enforcement trust fund for the agency (or agencies) that effected the forfeiture. See K.S.A. 65-4173.

Viewed in light of our limited standard of review, *Tri-County* is dispositive of the issue before us. In *Tri-County*, the City of Herington created the Tri-County Public Airport Authority and conveyed to the Authority air base property it had acquired from the United States Government. The Authority operated a public airport on part of the property and leased the remainder to various private entities to generate money to operate the airport. 245 Kan. at 302.

The Authority sought a determination that all of its property was tax exempt under the same statutory provision at issue here. Morris County did not contest the exemption for property used for airport purposes but challenged the availability of the exemption for the property the Authority leased for revenue production. All of the revenue generated by the leased property was used to finance airport operations and debt service on airport revenue bonds. The Authority's conduct was within the law. Kansas law authorized the Authority to levy taxes to finance its operations. Kansas law also authorized the Authority to own and operate property for revenue production from nonaviation businesses. The Authority financed the airport solely from the revenue generated by its lease operations, rather than levying taxes or issuing bonds. 245 Kan. at 302-03.

In *Tri-County*, the Authority did not contend that it performed a governmental function when it leased its property for purposes unrelated to airport activity but contended that in leasing the property to finance the airport, it was using the property for a governmental or proprietary function. 245 Kan. at 308. The County argued that no public function was being carried out on the land, so it was not "used exclusively" for a governmental or proprietary purpose.

BOTA and this court determined that the Authority's non-airport property, which it held and leased to raise money to operate the airport, was not exempt under K.S.A. 79-201a *Second*. In so holding, we noted that statutory authority to own the property did not "necessarily mean that the property is being 'used exclusively' for the required purpose under 79-201a *Second* so as to qualify for ad valorem tax exemption." 245 Kan. at 308. We also noted that the mere ownership of property by an exempt entity was not enough to qualify for the exemption. 245 Kan. at 309. Strictly construing the statutory exemption, we concluded that "exclusive use of property as defined by K.S.A. 1988 Supp. 79-201a *Second* requires actual use of the property for a public purpose." 245 Kan. 301, Syl. ¶ 4. We also rejected the Authority's contention that its use should be considered proprietary, and thus adequate for purposes of the exemption: "The use must be in the

nature of a public use even though proprietary in nature." 245 Kan. at 310.

We acknowledge that in *Tri-County* the Authority sought a tax exemption for revenue producing property. The City here did not lease the property, and the property did not generate any revenue for the City during its ownership—it did not generate any funds until it was sold. We do not find this difference material. In both cases the government entity held title to the property, did not actually use the property, acquired revenue from the property, and used that revenue for a public purpose.

In addition to its reliance on *Tri-County*, the Board of Sedgwick County Commissioners (County) argues that *Washburn College v. County of Shawnee*, 8 Kan. *344 (1871), controls. In *Washburn*, the statute exempted property "used exclusively for . . . literary, educational . . . purposes." 8 Kan. at *348. The college acquired ownership of property and expressed an intention to occupy it as a permanent site. The court held that the college did not show an actual use—"[a]n intention to occupy is not equivalent to occupation [and] does not tend to prove it." 8 Kan. at *349. Thus, the County reasons, because the City was merely holding the property, it was not actually using it and is not entitled to the exemption—even if the ultimate sale and disposition of proceeds was a governmental or proprietary function.

The City responds by directing the court's attention to *Durkee v. Comm'rs of Greenwood Co.*, 29 Kan. 697 (1883). In *Durkee*, the county acquired property from a defaulting county treasurer in partial payment of the debt he owed the county. This court held:

"In accepting the land, the county authorities were not going into the real-estate business for speculative purposes, or to use the same for other than county purposes. Therefore, as the property was taken to satisfy a debt due to the county, and was taken and used exclusively for county purposes, it was exempt from taxation." 29 Kan. at 699.

The court distinguished the *Washburn* case because in *Washburn* the college acquired the property for the sole purpose of erecting the college on it but did not do so and did not use it for any actual use of the college:

"Here the property was taken to secure a debt; and while not in actual use, in the way of cultivation or with public buildings, nevertheless it was held for the use of the county, and exclusively for the county, and when sold the proceeds were for the use and benefit of the county." *Durkee*, 29 Kan. at 699.

In *Durkee*, however, the mere acquisition and sale of the property amounted to a use that served a public purpose—it satisfied a debt owed to the county. In the present case, acquisition and sale of the property is incidental to the public purpose of law enforcement.

The primary problem with the City's position is its reliance upon the argument that the actual or potential deterrent *effect* of acquiring the property is an exclusive *use* of the property as required by K.S.A. 79-201a. There is no question that the purpose of the forfeiture statutes is accomplished by forfeiture of the property and, in that respect, the forfeiture accomplishes a governmental purpose. However, *Tri-County* requires "actual use" of the property. As in *Tri-County*, that requirement is not satisfied here. The City acquired the property through statutory procedures, as did the City of Herington and the Authority in *Tri-County*. The City used the revenue from the property at issue for a public purpose. In *Tri-County*, that purpose was the public airport; here, that purpose is law enforcement. The property here stood vacant; no one actually used it, although the City used the revenue generated from it. In *Tri-County*, the Authority did not actually use the property, but used only the revenue generated from it. Thus, in both cases the government entity held title to property, did not actually use the property, acquired revenue from the property, and used that revenue for a public purpose. In *Tri-County* the property was not exempt. *Tri-County* supports a finding that the property at issue here is not exempt.

There may be, as the City points out, policy reasons supporting an exemption for property acquired through the statutory forfeiture procedures at issue here. Such matters, however, are for the legislature to decide. It is not for this court to read into the statute an exemption because such would be beneficial in accomplishing the purposes of our Kansas forfeiture law. If the legislature considered that tax exemption would promote the policy

behind the forfeiture, it could provide for the exemption in the statute.

*Tri-County* requires us to find actual use of the property, and the property at issue was not used in the sense that term normally is understood. Although "use" also can mean purpose or end, the term "use" typically contemplates some active, actual utilization of the property. Black's Law Dictionary defines "use" as:

"Act of employing everything, or state of being employed; application, as the use of a pen, or his machines are in use. Also the fact of being used or employed habitually; usage, as, the wear and tear resulting from ordinary use. [Citation omitted.] The purpose served; a purpose, object or end for useful or advantageous nature. [Citation omitted.] To put or bring into action or service; to employ for or apply to a given purpose. [Citation omitted.] To avail oneself of; to employ; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end. [Citation omitted.]" Black's Law Dictionary 1541 (6th ed. 1990).

The determination of tax exemption under the statute depends to a large extent upon the status of the property in the hands of the owner and whether it actually is being used for a public purpose. The property in question was lying dormant during the pertinent time. It was not being used by anyone and was held for sale with proceeds committed to associated expenses and future governmental purposes. This does not constitute actual use as contemplated under K.S.A. 79-201a. We believe that strict construction of the statutory exemption requires this result. Moreover, our review of the BOTA decision is limited, and we conclude its interpretation of the statutory exemption is not so unreasonable that it rises to the level of being arbitrary and capricious. Accordingly, we conclude that the district court correctly interpreted and applied the law and that its decision is supported by substantial competent evidence.

Affirmed.