Mark L. Bennett, Jr., Counsel State Board of Technical Professions 1605 S.W. 37th Street Topeka, Kansas 66611-2810
Dear Mr. Bennett:
As counsel for the State Board of Technical Professions you inquire whether a commercial feedlot constitutes an agricultural building under the exemption in K.S.A. 74-3033 (b), so that a person preparing plans, drawings or specifications of such a feedlot need not be a licensed engineer. You also inquire whether land surveying for a commercial feedlot constitutes surveying for agricultural purposes under the exemption in K.S.A. 74-7034(a).
You indicate that the Kansas Department of Health and Environment (KDHE) routinely reviews and approves designs, plans and specifications for confined animal feeding operations (which include commercial feedlots) and does not require that such designs, plans and specifications be prepared by a licensed engineer. KDHE issues permits for facilities which may involve dairy facilities with a maximum of 4,280 head of cattle or may involve confined livestock feeding facilities with 35,000 head of cattle. You state these large confinement facilities produce extraordinary amounts of animal waste and pose a risk of groundwater contamination.
Your first question is whether the Legislature intended to exempt commercial feedlots when they exempted agricultural buildings from the licensure requirements of the practice of engineers. The interpretation of a statute is a question of law and it is the function of the court to interpret the statute to give it the effect intended by the legislature. In reTax Exemption Application of City of Wichita, 255 Kan. 838, Syl. ¶ 6 (1994); City of Wichita v. 200 South Broadway,253 Kan. 434, 436 (1993). At issue is whether the Legislature intended to authorize KDHE to issue permits for confined animal feeding operations (CAFO) (sometimes referred to as confined feeding facilities), such as commercial feedlots, on plans which have not been prepared by a licensed engineer.
Identical provisions exempt "agricultural buildings" from the licensing statutes governing both the practice of engineering and the practice of architecture. K.S.A. 74-7033; K.S.A. 74-7031. The term is defined in the practice of architecture, K.S.A. 74-7031 as:
 "[A]ny structure designed and constructed to house hay, grain, poultry, livestock or other horticultural products and for farm storage of farming implements. Such structure shall not be a place for human habitation or a place of employment where agricultural products are processed, treated or packaged; nor shall it be a building or structure for use by the public."
A commercial feedlot appears to qualify as an agricultural building in that it is a structure designed and constructed to house livestock, is not a place for human habitation or a place of employment where agricultural products are processed, treated or packaged, nor is it a building or structure used by the public. But, given that neither legislative history nor any recent amendments to the act indicate whether the Legislature intended that the exemption for agricultural buildings include the large scale operations of confined feeding facilities, we do not find the definition in K.S.A. 74-7031 dispositive of the question. Where the face of the statute leaves its construction uncertain, courts may look to the historical background of the enactment, the circumstances attendant to its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested. State v. Gonzales, 255 Kan. 243, 249
(1994), citing Brown v. Keill, 224 Kan. 195, Syl. ¶ 3 (1978).
A recent amendment to the relevant KDHE statutes (which govern the approval of permits for confined feeding facilities) indicates a clear legislative intent to exempt the preparation of plans for commercial feedlots from the practice of engineering. The 1997 Legislature amended 1996 Supp. 65-171d as follows:
 "All plans and specifications submitted to the department for new construction or new expansion of confined feeding facilities may be, but are not required to be, prepared by a professional engineer or a consultant." 1997 H.B. 2219, § 2(g). (Emphasis added.)
The Legislature, in addressing the issue of water pollution prevention [which is the same concern that prompted the Board to make this inquiry], amended KDHE's authority to accept plans for a confined animal feeding operation which are not prepared by a professional engineer.
Moreover, the broad language of K.S.A. 1996 Supp. 65-171d, as amended, specifically addresses the potential water pollution risk of concern to the Board. Section 2 of 1997 House Bill No. 2219 states:
 "For the purpose of preventing surface and subsurface water pollution and soil pollution detrimental to public health or to the plant, animal and aquatic life of the state, and to protect the beneficial uses of the waters of the state and to require the treatment of sewage predicated upon technologically based effluent limitations, the secretary of health and environment shall make such rules and regulations, including registration of potential sources of pollution, as may in the secretary's judgment be necessary to. . . ."
Additionally, Section 2(g) requires the identification of any significant water pollution potential prior to any new construction or any new expansion of a confined feeding facility with an animal unit capacity of 300 to 999 and imposes registration and permit requirements.See 1997 H.B. 2219, amending K.S.A. 1996 Supp. 65-171d
and 65-3406. Control of water pollution is also the objective in the statute which authorizes the Livestock Commissioner to request that the Secretary of Health and Environment make staff engineers available to assist an operator of a feedlot in the development of plans and design for the construction of feedlot facilities. K.S.A. 47-1511.
In conclusion it is our opinion that the Legislature intended to exempt commercial feedlots from the statutes which govern the practice of engineering by specifically authorizing KDHE to accept plans for a confined feeding facility which have not been prepared by an engineer.
Your second question concerns the practice of land surveying in connection with the construction of commercial feedlots. You inquire whether land surveying for a commercial feedlot constitutes surveying for agricultural purposes under the exemption found at K.S.A. 74-7034.
We assume that the agricultural exemption cited in your question is exemption (c) which states:
 "The provisions of the practice of land surveying requiring licensure shall not be construed to prevent.
. . . .
 "(c)The surveying on farms for agricultural purposes other than the conveyance of an interest in such farm property." K.S.A. 74-7034(c).
The exemption involves "surveying on farms" for agricultural purposes. Although commercial feedlot operations are agricultural endeavors, they are not farms as the term has been consistently construed in case law.See T-Bone Feeders, Inc. v. Martin, 236 Kan. 641, 648, 649 (1985) (discussing the statutes which govern feedlot operations, K.S.A. 47-1501et seq. and several other statutory enactments which distinguish between an agricultural pursuit and farming). For this reason, it is our opinion that land surveying for commercial feedlots is not surveying on farms for agricultural purposes. However, your inquiry involves surveying in connection with the construction of a commercial feedlot and may be exempted from the provisions of the act by another provision.See K.S.A. 74-7034(a).
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm